UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 5:13-CV-00143-ACC-PRL

LARRY KLAYMAN,

      Plaintiff,

vs.

CITY PAGES,
KEN WEINER a/k/a KEN AVIDOR,
AARON RUPER,
PHOENIX NEW TIMES,
MATTHEW HANDLEY, and
VOICE MEDIA GROUP,

      Defendants.

_____/

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS

All Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move for the entry of an Order dismissing with prejudice Plaintiff's Complaint [DE 1] because it fails to state a claim. The grounds for this Motion are:

## I.      INTRODUCTION

This lawsuit arises from newspaper reports of rulings by courts in Ohio that Plaintiff engaged in inappropriate conduct with his two minor children. Specifically, the two reports quote from an Ohio appellate court's decision that affirmed a magistrate judge's ruling. The quoted language from the appellate court's decision ends with the following language: "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children."

In Ohio, sexual contact such as described by the magistrate is a crime. Section 2907.01(B) of the Ohio Revised Code defines sexual contact as "any touching of an erogenous

zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Section 2907.06 makes such contact a crime when the victim is a child.  Given the magistrate's description of what Plaintiff did – and after reading the Ohio law (or any other state's law, for that matter) – no reasonable person could conclude anything other than what Plaintiff did was criminal.

Indeed, it is hard to imagine what Plaintiff's explanation of his conduct could be, which probably explains why he consistently avoided testifying about this or otherwise telling the magistrate what he did and why.  As the magistrate noted, Plaintiff would not answer the question of what he thought "inappropriate touching" was, and he even invoked the Fifth Amendment to avoid answering the question.

In his presuit notice, which is a statutory condition precedent to suing for defamation and defamation by implication, Plaintiff identified only one statement he was intending to sue on: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."   That statement appeared in only one of the reports.

Thus, this lawsuit is about whether Plaintiff can sue Defendants for making that one statement in light of the magistrate's finding that Plaintiff's behavior was "grossly inappropriate," and the Ohio appellate court's decision affirming the magistrate.  He cannot, and the reasons he cannot is because the statement is truthful and cannot form the subject of a claim for defamation, because he does not identify any true statements of fact as is necessary to state a claim for defamation by implication, and because his claims are barred by the substantial truth doctrine and the privilege for fair and accurate reports of official documents.

**A.      The Ohio Courts' Orders.**

As Plaintiff acknowledges in paragraph 20 of the Complaint, a magistrate judge in Ohio found that Plaintiff engaged in inappropriate contact and conduct with his minor children.  This finding – and the others summarized below – was made after an eighteen day trial in the course of litigation between Plaintiff and his former spouse (the mother of his children) relating to the issues of child custody and visitation.

Although Plaintiff did not attach a copy of the magistrate's order to the Complaint, Defendants have attached a copy as Exhibit 1, which the Court may consider at the motion to dismiss stage because not only is it referred to in the Complaint, but it is central to Plaintiff's claims and its authenticity cannot be challenged.  *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley*, 304 F.3d at 1134).

The magistrate's ninety-three page written order details, among other things:

- Allegations that Plaintiff inappropriately touched his son's genitals;

- Allegations that Plaintiff kissed his son and daughter "all over" their bodies;

- Allegations that Plaintiff had his daughter wash his genitals;

- The children's pediatrician contacted a child welfare agency to report that Plaintiff had possibly molested his son;

- A state social worker found that sexual abuse was indicated;

- One of Plaintiff's female friends took Plaintiff's nine year old daughter to a lingerie store and purchased thong underwear for the daughter, which Plaintiff encouraged his daughter to wear;

- Plaintiff's complete lack of credibility; and

- State and federal judges across the country having found Plaintiff to have acted with complete disregard for the judicial process.

The magistrate also addressed, in painstaking detail, each of the arguments Plaintiff made in response to these points, and why all of his arguments failed.  On the basis of those and other findings, the magistrate ruled against Plaintiff in the litigation with his former spouse.

The trial court judge adopted the magistrate's report in its entirety (Exhibit 2).

Plaintiff appealed, and the appellate court affirmed in all respects (Exhibit 3).   In affirming the portion of the magistrate's order relating to Plaintiff's inappropriate contact and conduct with his children, the appellate court wrote:

{¶23}   In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.

{¶24}   A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers* v. *Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. *See Seasons Coal Co.* v. *Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Cohen* v. *Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

{¶25}   The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify.   The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him.   In doing so, the magistrate found

on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.

{¶26}  The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children.   The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriffs Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children.   "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was.   The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

{¶27}  After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶28}  Klayman's third assignment of error is overruled.

The Supreme Court of Ohio declined to hear the case (Exhibit 4).

**B.**    **The Articles and Plaintiff's Pre-Suit Notice.**

As Plaintiff acknowledges in paragraphs 9 and 12 of the Complaint, Defendants published articles relating to Plaintiff on September 28, 2012 and February 22, 2013.   The September 28 article is entitled "Bradlee Dean's attorney, Larry Klayman, allegedly sexually abused his own children" (Compl., ¶9).   The February 22 article is entitled, "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids" (Compl., ¶12). Plaintiff did not attach either article to the Complaint, but Defendants have attached them to this motion as **Exhibits** 5 and 6, respectively, and the Court may consider them in connection with the motion.  *See, e.g., Horsley*, 304 F.3d at 1134; *Day*, 400 F.3d at 1276.   Each article notes

Plaintiff's public involvement with controversial, politically conservative causes, and accurately quotes – at length – the portion of the appellate court's order affirming the findings that Plaintiff inappropriately touched his children.

The notice that Plaintiff sent to Defendants pursuant to §770.01, Florida Statutes,[1] identified *only* the following statement, which was contained in the September 28 article:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps." [2]  A copy of the notice is attached to the Complaint as Exhibit 1.  Plaintiff's notice did not identify any statements contained in the February 22 article.

## C.     Plaintiff's Complaint.

Plaintiff filed his two-count complaint on March 20, 2013.  Because notices sent under §770.01 define the scope of any subsequent lawsuit, the only statement identified in the Complaint is from the September 28 article:   "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (the "Statement") (Compl., ¶10).[3]

---

[1] The letter mistakenly cites §770.02, which relates to the type of damages that may be recovered if allegedly defamatory statements are retracted.

[2] Section 770.01 requires, as a condition precedent to asserting a claim for defamation and defamation by implication, that the plaintiff give the publisher written notice "specifying the article or broadcast *and the statements therein* which he or she alleges to be false and defamatory" (emphasis added); *see also Gannett Florida Corp. v. Montesano*, 308 So.2d 599, 599-600 (Fla. 1st DCA 1975) (finding that a 770 notice was defective because although it identified the articles, it did not identify the specific statements alleged to be defamatory); *Nelson v. Associated Press, Inc.*, 667 F.Supp. 1468, 1474-75 (S.D. Fla. 1987) (same) (granting a motion to dismiss); *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1112 (Fla. 2008) (§770.01 applies to defamation by implication).

[3] Under the authorities cited in footnote 2, Plaintiff is barred from suing on any statement(s) contained in the February 22 article because his presuit notice did not identify any statement(s) from that article.

Plaintiff alleges that the Statement is false because he "has never been found by any legal entity or agency to have sexually abused his children, much more (sic) committed or been convicted of a crime in this regard" (*Id.*, ¶11).   Count I purports to state a claim for defamation, alleging that the Statement is false and defamed him.   Count II purports to state a claim for defamation by implication, alleging that the Statement implies false things about him.   Each count should be dismissed with prejudice.

## II.      ARGUMENT

### A.      Count I, For Defamation, Fails To State A Claim.

Count I purports to state a claim under Florida law for defamation.   A claim for defamation must be premised upon a *false* statement of fact.   *See Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action"); *Johnson v. Clark*, 484 F.Supp.2d 1242, 1247 (M.D. Fla. 2007) (quoting *Byrd*, 433 So.2d at 595) (same).

The Statement says:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."   Plaintiff alleges the Statement is false because he "has never been found by any legal entity or agency to have sexually abused his children," and he has never committed or been convicted of a crime relating to touching his children (Compl., 11, 15).   Plaintiff is wrong, and Count I fails because the Statement is true.

With respect to Plaintiff's first allegation of falsity – that he "has never been found by any legal entity or agency to have sexually abused his children" – the Statement does not say that Plaintiff "sexually abused" the children.   It *does* say he was found to have inappropriately touched them and, in saying that, it accurately reports what the Ohio courts said.   In affirming the

magistrate's findings that Plaintiff inappropriately touched his children, the appellate court wrote – as quoted in the September 28 article – "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Ex. 3).  The Statement is true and cannot be the basis of a claim for defamation.

With respect to Plaintiff's second allegation of falsity – that he has never committed or been convicted of a crime relating to touching his children – the Statement does not say that Plaintiff was convicted of a crime.  Instead, it says Plaintiff engaged in "disturbing, criminal sexual behavior," which accurately describes the conduct in which the magistrate and appellate court said he engaged.  The word "criminal" – as used in the Statement – is an adjective describing the behavior addressed by the Ohio courts; it is not an adjective describing Plaintiff or a pronoun substituting for his name.

Indeed, such conduct *is* criminal in Ohio, *see* Ohio Rev. Code, §§2907.01(B) and 2907.06, and it is hard to imagine that there are any jurisdictions in which an adult inappropriately touching a child is *not* criminal behavior.  *See* §800.04(5), Florida Statutes.  That Plaintiff was not charged with or convicted of a crime does not mean that he did not engage in disturbing, criminal sexual behavior.  He did engage in such behavior, and when given the opportunity to deny that he inappropriately touched his children, he invoked his Fifth Amendment rights, which means he believed testimony about the touching could incriminate him.

Count I should be dismissed with prejudice because the Statement is true.

**B.     Count II, For Defamation By Implication, Fails To State A Claim.**

Count II purports to state a claim under Florida law for defamation by implication. Whereas a claim for defamation requires false statements of fact, a claim for defamation by implication requires "literally *true* statements [that] are conveyed in such a way as to create a false impression." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008) (emphasis added). As mentioned above, the only statement from either article identified in the Complaint is the Statement (Compl., ¶10). Putting aside whether the Statement creates a false impression (Compl., ¶20), Count II fails at the threshold because it alleges that the Statement is <u>false</u>.

Specifically, paragraphs 11 and 15 of the Complaint allege that the Statement is false. Those allegations have been made part of Count II by operation of paragraph 19, which is within Count II and states "Plaintiff Klayman realleges and reavers paragraphs 1 through 18 of this complaint as if fully incorporated herein." In light of Count II's allegations that the Statement is false, the claim necessarily fails because defamation by implication requires true statements.[4] Put another way, the elements of the claim require Plaintiff to allege that the Statement is literally true, which he does not and will not do. As such, Count II should be dismissed with prejudice.

**C.     Counts I and II Are Barred By The Substantial Truth Doctrine.**

Not only do Counts I and II fail for the reasons just discussed, but they fail for the additional reason that even if the Statement or the impression it creates are not "perfectly accurate," they are substantially true, and that is all the law requires.

---

[4] This is one of the risks of shotgun pleading, where each count incorporates the allegations of every preceding count. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *Smith v. Cuban American National Foundation*, 731 So.2d 702, 706 (Fla. 3d DCA 1999) (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)); *see also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999) (applying Florida law).  "According to U.S. Supreme Court and Florida case law, falsity exists only if the publication is substantially and materially false, not just if it is technically false." *Smith*, 731 So.2d at 707.  Put another way, "[a] 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Id.* (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).  Thus, instead of requiring perfect accuracy, what Florida "'law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial.'"  *McCormick v. Miami Herald Publishing Co.*, 139 So.2d 197, 200 (Fla. 2d DCA 1962) (quoting 53 C.J.S. Libel and Slander §122).

The "gist" or "sting" of the Statement – in the context of the September 28 article in which it appears[5] – is that courts in Ohio found that Plaintiff inappropriately touched his children.  That is, in fact, what those courts wrote in their orders.  Plaintiff – who invoked the Fifth Amendment rather than testify about what he did – alleges that the Statement is nonetheless actionable because, by describing his behavior as criminal, it inaccurately states or creates the impression that he committed a crime or was convicted for inappropriately touching his children. The substantial truth doctrine exists exactly for this type of situation.

---

[5] In evaluating the meaning of a statement, including any defamatory meaning, the statement must be viewed in the totality of the publication in which it appears.  *See Byrd*, 433 So.2d at 595; *Smith*, 731 So.2d at 705.

The effect of the Statement – and the September 28 article's lengthy quotations from the appellate court's decision – on the mind of the reader is that Plaintiff inappropriately touched his children.[6]   Excluding the word "criminal" from the Statement – such that it would read:  "Turns out, gays aren't the only ones capable of disturbing sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" – does not produce a different effect on the mind of the reader.  The gist or sting remains the same:  Plaintiff inappropriately touched his children.

Thus, even if the Statement and the impression it creates are not perfectly accurate (which they are), Counts I and II nonetheless fail because they are substantially true.

## D. Counts I And II Are Barred By The Privilege For Fair And Accurate Reports Of Official Documents.

There is an additional and independent reason Counts I and II fail.  "[M]any safeguards and privileges have been established throughout the years that have effectively balanced the right of individuals to be free from defamatory statements against the rights guaranteed by the First Amendment to freedom of expression."  *Jews for Jesus*, 997 So.2d at 1111.  These "safeguards and privileges" apply equally to claims for defamation and defamation by implication.  *Id.* at 1111-12.  One of these privileges is for fair and accurate reports of government activities and documents.  *Id.* at 1111.

---

[6] Whether a statement is capable of defamatory meaning is a question of law that the court must resolve in the first instance.  *See, e.g., See, e.g., Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 583 (5th Cir. 1968); *Silvester v. American Broadcasting Companies*, 650 F.Supp.2d 766, 770 (S.D. Fla. 1986) ("Under Florida law, the statement at issue in a libel suit must be reasonably capable of a defamatory interpretation.  This determination is to be made by the court in the first instance . . . ."); *Byrd*, 433 So.2d at 595 (quoting *Wolfson v. Kirk*, 273 So.2d 774, 778 (Fla. 4th DCA 1973)) ("'Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in . . .  dismissing the complaint for failure to state a cause of action . . . .'").

The press has a privilege to report on the contents of government documents, so long as the report of the document is fair and accurate. *See Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 502 (Fla. 3d DCA 1993); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 977 (Fla. 3d DCA 1987); *Huszar v. Gross*, 468 So.2d 512, 515-16 (Fla. 1st DCA 1985); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997).  This privilege applies even if the content of the documents is erroneous; and the press has no duty to determine the accuracy of the content before publishing fair and accurate reports of it.  *See Woodard*, 616 So.2d at 502-03; *Ortega*, 510 So.2d at 976.

The September 28 article was a fair and accurate report of the appellate court's order, which stated that it was affirming the magistrate's finding that Plaintiff inappropriately touched his children.  The Statement's description of Plaintiff's behavior as being "criminal" fairly and accurately characterizes the inappropriate conduct described in the court orders.  *See, e.g.,*Ohio Rev. Code, §§2907.01(B) and 2907.06.  Counts I and II should be dismissed with prejudice because they are barred by the privilege for fair and accurate reports of government documents.

## III.   CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendants
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/ Scott D. Ponce
Sanford L. Bohrer (FBN 160643)
Scott D. Ponce (FBN 0169528)
Email: sbohrer@hklaw.com
Email: sponce@hklaw.com

12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of May 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

<u>/s/ Scott D. Ponce</u>

#23086389_v2