## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

LARRY KLAYMAN,
2775 NW 49th Ave, Suite 205-346
Ocala, FL 34483

Plaintiff.

v.

CITY PAGES
401 N. 3rd St. Suite 550,
 Minneapolis, MN 55401

KEN WEINER a.k.a. KEN AVIDOR (alias)
401 N. 3rd St. Suite 550,
 Minneapolis, MN 55401

AARON RUPAR
401 N. 3rd St. Suite 550,
 Minneapolis, MN 55401

PHOENIX NEW TIMES
1201 E. Jefferson,
Phoenix, AZ 85034

MATHEW HENDLEY
1201 E. Jefferson,
Phoenix, AZ 85034

VOICE MEDIA GROUP
969 Broadway,
Denver, CO 80203

Defendants.

Civil Action No. 5:13-cv-00143-ACC-PRL

## __AMENDED COMPLAINT__

Plaintiff, Larry Klayman, hereby sues Defendants City Pages ("CP"), Ken Weiner

a.k.a. Ken Avidor (hereafter "Avidor"), Aaron Rupar ("Rupar"), Phoenix New Times

("PNT"), and Voice Media Group ("VMG") and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This court has original jurisdiction under the provisions of 28 U.S.C. 1332 because it is a civil action between citizens of different states and the matter in controversy herein exceeds the sum or value of $75,000, exclusive of interest and costs.

2. Plaintiff Larry Klayman resides in and does business in this judicial district and in 2004 ran as a candidate for the U.S. Senate in Florida in the Republican primary. He is the founder and former chairman and general counsel of Judicial Watch, and was admitted into The Florida Bar on December 7, 1977. He became a member of the bar of this court in and around this time as well, and has practiced law here throughout his career, with active cases still pending here and elsewhere in the state of Florida.

3. Defendant Ken Avidor, who is in reality Ken Weiner, Avidor being a false alias (hereafter "Avidor"), was at all material times a reporter and writer for Defendant CP. On information and belief, Avidor is a radical pro-homosexual activist and before becoming a reporter and writer for City Pages was fired from a pornography magazine called "Screw" by his then boss Al Goldstein. On information and belief, Avidor has an arrest record for assault in the state of New York, and has misrepresented his identity using fictitious ID's under the names Ned Luddington and George Haydoke. On information and belief Avidor resides in Minnesota. Defendant Avidor, along with Defendant Rupar (below), who on information and belief also resides in Minesota, co-authored an article published

in CP, and later linked and republished in an article published by Defendants PNT and VMH as set forth below, titled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children."

4. Defendant Rupar was at all material times also a reporter and writer for Defendant CP and on information and belief is also a radical pro-homosexual activist, in the mold of Defendant Avidor.

5. Defendant CP was at all material times a publication, based in Minnesota, and is owned by its parent company VMG. CP's and VMH's political philosophy is far left and in particular supports and promotes a perverse radical gay, lesbian, transgender sexual orientation and lifestyle for children and others at home and in the workplace. They are also pro illegal immigrant.

6. Defendant PNT was at all material times a publication, based in Phoenix Arizona, and is admittedly affiliated with CP though their parent company VMG. PNT and VMG's  political philosophy is far left and in particular supports and promotes a perverse radical gay, lesbian, transgender sexual orientation and lifestyle for children and others at home and in the workplace. They are also pro illegal immigrant.

7. Defendant Mathew Hendley was at all material times a reporter for PNT who authored an article in Defendant PNT and by Defendant VMG on or about February 22, 2013 titled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have 'Inappropriately Touched' His Kids." In this article Defendants PNT and VMG link the above mentioned and touted the article authored by Defendants Avidor and Rupar and published by Defendants CP and VMG. On information

and belief Defendant Hendley is also far left and pro radical gay, lesbian, transgender "rights" and pro illegal immigrant.

8. On June 18, 2013 Defendants Hendley and Phoenix New Times published by and through Defendant VMG another article entitled "Larry Klayman Under Investigation by Arizona Bar." Exhibit 2. In the June 18, 2013 article Defendants published the statement, inter alia, that "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work."

9. Defendant VMG was at all material times the parent holding company of CP and PNT and its principal place of business is in Denver, Colorado where its headquarters is located. According to VMG, this privately held media company, as of September 24, 2013, reaches "more than seven million monthly readers in print and 16 million unique desktop visitors each month, in addition to 1.2 million e-mail subscribers, more than 5.7 million visits on mobile, and more than forty signature food, music and arts events per year nationwide." In addition to CP and PNT, the company owns and operates many other print and internet publications, all with an extreme activist pro-homosexual gay, lesbian and transgender orientation and lifestyle. Among VMG's holdings are the Village Voice, LA Weekly, SF Weekly and other New Times publications throughout the United States. According to VMG, its chief executive officer is Scott Tobias, its chief executive editor is Christine Brennan, and Jeff Mars is its chief financial officer Tobias, Brennan and Mars comprise VMG's so called "executive team," which

controls and supervises the day to day operations of the company and its holdings.

The company and its directors and officers are also pro illegal immigrant.

## FACTS

10. On or about September 28, 2012 Defendants CP and VMG by and through its
    reporters Defendant Avidor and Rupar, published nationwide, internationally and
    in this district an article titled "Bradlee Dean's attorney, Larry Klayman,
    Allegedly Sexually Abused His Own Children." Exhibit 1. The article was
    intended to negligently, willfully, and/or maliciously defame Plaintiff Klayman,
    who as a lawyer has been representing Bradlee Dean, a Christian preacher and
    musician who, through his ministry You Can Run But You Cannot Hide
    International, is invited into schools to teach children Judeo-Christian ethics and
    morals. In recent years, the radical homosexual gay, lesbian and transgender
    lobby have sought to pressure schools to teach young children that the gay,
    lesbian and transgender lifestyle is normal if not desired behavior, thereby seeking
    to mold and indoctrinate these  children in and to their homosexual gay, lesbian
    and transgender lifestyle. Mr. Dean and YCR have opposed the radical gay,
    homosexual, lesbian and transgender agenda and are strong advocates in doing so.

11. Thus, in order to discredit Dean and YCR, who Defendants claim have accused
    some gays and lesbians of abusing children, Defendants, each and every one of
    them, by and through Avidor, Rupar, and CP, published at statement in the
    abovementioned article which is libelous and constitutes defamation and
    defamation by inference. Stating that Dean's and YCR's own attorney Plaintiff
    Klayman has sexually abused his own children, Defendants negligently, willfully,

and/or maliciously stated: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean turn out to be total creeps."

12. Plaintiff Klayman has never been found by any legal entity or agency to have sexually abused his children, much more committed or been convicted of a crime in this regard. As a result, Klayman, Dean's and YCR's lawyer, was libeled per se by Defendants as a result of their negligent, willful, and/or malicious desire to harm Dean and YCR's ministry, and their lawyer Larry Klayman, in order to promote their radical gay, lesbian and transgender agenda with children and others. To the contrary Plaintiff Klayman was cleared of these false charges leveled his ex-wife by the Cleveland Department of Children and Families, the Cayahoga County Sheriff's Department and the District Attorney, all of whom dismissed the ex-spouse's complaint. As is true, according to experts in about 80 percent of all domestic relations cases, these false charges were manufactured and "conveniently" leveled only for tactical reasons after Plaintiff Klayman had filed for custody of his children. In addition, Plaintiff Klayman voluntarily took and passed a polygraph examination which provided further proof that he did not sexually abuse, much less inappropriately touch, his children, while tellingly his ex-spouse refused to submit to a polygraph over her false charges. Importantly, the children even admitted that Plaintiff Klayman's ex-wife attempted to coach them, but they themselves could not remember or knew of any inappropriate touching of private or other parts by Plaintiff Klayman, and thus they themselves denied their mother's accusations. In any event, Plaintiff Klayman has never

committed or been convicted of any crime, as Defendants falsely wrote and published.

13. With regard to other legal representation by Plaintiff Klayman, wherein he represents a group of Arizona citizens, The Citizens to Protect Fair Election results, who opposed an illegal recall petition to remove Sheriff Joe Arpaio in Maricopa County, Arizona, Defendants Hendley, PNT and VMG published an article on or about February 22, 2013, titled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have "Inappropriately Touched" Kids." PNT, and in addition to supporting and furthering the radical gay, lesbian and transgender agenda, has shown a malicious hatred for Sheriff Joe Arpaio based upon his strong enforcement of immigration laws and manufactured false charges that he has not "prosecuted" cases of sexual abuse. Thus, the attack on Plaintiff Klayman who Defendants Hendley, PNT and VMG obviously sees as aiding the sheriff. In this article, Defendants Hendley, PNT and VMG admit that they are and were acting in concert with its sister publication CP, from which it received its information about Plaintiff's Klayman's alleged child sexual abuse. The article links the previously published libelous CP article of September 28, 2012, and thus Defendants Hendley, PNT, VMG have also again libeled, defamed and defamed by implication, Plaintiff Klayman through this republication, compounding the damage to Plaintiff Klayman.

14. On June 18, 2013 Defendants Hendley and Phoenix New Times published another article entitled "Larry Klayman Under Investigation by Arizona Bar." Exhibit 2.

15. Within the June 18, 2013 article Defendants published the statement that "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, **and never doing any work**."

16. Defendants Hendley and Phoenix New Times, having at their disposal the public reprimand that they referenced in the article, knowingly and willingly, that they were false, since among other false statements, Plaintiffs did do considerable work for his client, Natalia Humm, and this was not the basis of The Florida Bar matter.

17. Plaintiff Klayman has given Defendants, each and every one of them, the required notice under Section 770.02, Florida Statutes (2012). No response from any of the Defendants has been forthcoming. Exhibit 3.


## COUNT I – DEFAMATION
## (Each and Every Defendant)

18. Plaintiff Klayman realleges and reavers paragraphs 1 through 17 of this Complaint as if fully incorporated herein.

19. Defendants Avidor, Rupar, CP, Hendley, PNT and VMG's above-mentioned misleading and false publications concerning Plaintiff Klayman were done negligently, willfully and/or maliciously, and constitute libel per se, as they defamed him by accusing him of committing and/or being convicted of a crime and were made in the context of his professional, as well as personal, life and endeavors. This publication was defamatory, as defined by the Florida Supreme Court, because it prejudiced Plaintiff Klayman in "the eyes of a substantial and

respectable minority of the community." <u>Jews for Jesus, Inc. v. Edith Rapp</u>, No. SC06-4291 (Slip Op) (S.C. Fl., October 23, 2008).

20. As a result, Plaintiff Klayman was severely damaged personally and in his trade and occupation as a lawyer and author, writer and columnist, among other areas.

21. Defendants, each and every one of them, acting in concert and jointly and severally, thus caused large actual, compensatory pecuniary and exemplary damages, as well as a loss of reputation and good will to Plaintiff Klayman. In addition, Defendants, each and every one of them, acting in concert and jointly and severally, caused severe anxiety, inner and personal feelings (personal humiliation, anguish and suffering) and emotional distress to Plaintiff, thus damaging him greatly. In sum, the published defamatory statements as alleged herein, as proscribed by Florida Supreme Court precedent, severely injured Plaintiff Klayman by tending to harm his reputation by lowering him in the estimation of the community or, more broadly stated, exposed Plaintiff Klayman to hatred, ridicule, or contempt and injured his business or reputation and occupation, and more specifically in his personal, social, official, or business relations. These defamatory publications were widely disseminated in a manner that makes it proper to assume that they reached a substantial and respectable minority of persons in the communities at issue.

22. In this regard, since the publication of these defamatory statements by Defendants, many other internet and written publications, on the internet and elsewhere, including the internet and written publications supporting the radical gay, lesbian, transgender and pro illegal immigrant and atheist agendas have

negligently, willfully, and/or maliciously used and published the false and misleading statements first published by the Defendants to also harm Plaintiff Klayman's reputation (either economic, political, or personal) by lowering him in the estimation of the community or, more broadly stated, exposing Plaintiff Klayman to hatred, ridicule, or contempt and  injure him in his business or reputation or occupation. Collectively, Exhibit 4. These publications include but are not limited to: "Right Wing Watch" the internet and print publication of People for the American Way, an ultra-leftist atheist public interest group, The Dump Bachmann Blog, Wonkette, a blog of the Baltimore Sun and a host of others that are proliferating daily on homosexual, lesbian, transgender, pro illegal immigrant, atheist, and other websites and print publications. As discovery proceeds, these putative defendants are subject to being added to this complaint through amendment. Indeed, this was Defendants negligent, willful, and/or malicious intention; to mobilize these leftist groups such as People for the American Way, and ultra leftist internet and print publications and their ultra leftist reporters to destroy Plaintiff and his clients.

## COUNT II – DEFAMATION
### (To Defendants Hendley, Phoenix New Times, and Voice Media Group)

23.  Plaintiff Klayman reallges and reavers paragraph 1 through 22 of this complaint as if fully incorporated herein.

24. Defendants Hendley and Phoenix New Times, by and through Defendant Voice Media Group, published an article entitled "Larry Klayman Under Investigation by Arizona Bar" on June 18, 2013. Exhibit 2.

25. Within the June 18, 2013 article the Defendants stated "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, **and never doing any work**."

26. The statement published by the Defendants was false.

27. This statement was published negligently, willfully and/or maliciously, and constitutes libel per se, as it defamed Plaintiff and his profession by stating that he took money from a client and never did any work for her, in effect stealing money from a client.

28. The publication prejudiced Plaintiff in "the eyes of a substantial and respectable minority of the community."

29. As a result of the defamatory published statements by the Defendants, severely injured Plaintiff Klayman as set forth above in paragraphs 20, 21, and 22 of this complaint, which are incorporated herein by reference.

30. Since the publication of these defamatory statements by Defendants, many other internet and written publications, on the internet and elsewhere, including the internet and written publications supporting the radical gay, lesbian, transgender and pro illegal immigrant and atheist agendas have negligently, willfully, and/or maliciously used and published the false and misleading statements first published by the Defendants to also harm Plaintiff Klayman's reputation (either economic, political, or personal) by lowering him in the estimation of the community or, more broadly stated, exposing Plaintiff Klayman to hatred, ridicule, or contempt and  injure him in his business or reputation or occupation.

## COUNT III – DEFAMATION BY IMPLICATION
### (Each and Every Defendant)

31. Plaintiff Klayman realleges and reavers paragraphs 1 through 30 of this complaint as if fully incorporated herein.

32. Defendants, each and every one of them, jointly and severally, defamed by implication Plaintiff Klayman, by publishing in this district, domestically and internationally, the above referenced statements, as they provide the reader the false and/or misleading impression given by juxtaposition or omission of facts that Plaintiff Klayman sexually abused and/or inappropriately touched his two children's private parts. Specifically, the publications negligently, willfully, and/or maliciously stated falsely and misleadingly that Plaintiff Klayman has committed and/or been convicted of a crime of child sexual abuse with regard to his two children when only one child, his son, was at issue, and omitted to state that the referenced finding of the Cleveland magistrate and judge remains subject to court challenge, that the magistrate who made the initial finding was biased and prejudiced against Plaintiff Klayman for his political and religious beliefs (the magistrate is Jewish and resented that Klayman, who is Jewish, because Klayman also believes in Jesus Christ and considers himself a Jewish Christian). Other omissions include but are not limited to the magistrate having made a myriad of biased and prejudiced remarks about Plaintiff Klayman and, as set forth above, that Plaintiff Klayman had taken a polygraph which confirmed that he did not sexually abuse and/or inappropriately touch his children's private parts, and that the matter had been thoroughly investigated by the Cleveland Department of

12

Families and the Cayohoga County Sheriff and District Attorney, all of whom came to identical findings and conclusions, among other material misstatements, falsehoods and omission of facts.

33. In addition, Defendants Hendley and Phoenix New Times, by and through Defendant Voice Media Group, published a material misstatement, falsehood, and omission of fact on June 18, 2013 when they stated that Plaintiff had a bar complaint against him for taking a client's money and "never doing any work."

34. The defamatory published statements by implication of the Defendants, each and every one of them, jointly and severally, severely injured Plaintiff Klayman as set forth above in paragraphs 20, 21 and 22 of this complaint, which are incorporated herein by reference.


WHEREFORE, Plaintiff Klayman prays for actual, compensatory and exemplary damages as set forth herein in excess of $15,000,000 as pleaded above in counts I, II, and III, plus attorneys fees and costs, and such other relief at the court may deem just and proper.  At a later time appropriate time, a prayer for punitive damages will also be plead.

Plaintiff Klayman requests trial by jury on all matters so triable.


Respectfully submitted,


*/s/ Larry Klayman*
Larry Klayman, Esq.
Florida Bar No. 246220
2775 NW 49th Ave, Suite 205-346

Ocala, FL 34483
Tel: (310) 595-0800
Email: leklayman@gmail.com

Plaintiff in Pro Se and as a Licensed
Practitioner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2013 a true and correct copy of the foregoing Amended Complaint ( Case No. 5:13-cv-00143) was submitted electronically to the U.S. District Court for the Middle District of Florida and served via CM/ECF upon the following:

**Sanford Lewis Bohrer, Esq.**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
305/374-8500
Fax: 305/789-7799
Email: sbohrer@hklaw.com


**Scott D. Ponce, Esq.**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
305/789-7575
Email: sponce@hklaw.com

*Attorneys for Defendants*