UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 5:13-CV-00143-ACC-PRL

LARRY KLAYMAN,

      Plaintiff,

vs.

CITY PAGES,
KEN WEINER a/k/a KEN AVIDOR,
AARON RUPER,
PHOENIX NEW TIMES,
MATTHEW HANDLEY, and
VOICE MEDIA GROUP,

      Defendants.

_____/

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS THE AMENDED COMPLAINT

All Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move for the entry of an Order dismissing with prejudice Plaintiff's Amended Complaint [DE 14] because it fails to state a claim.  The grounds for this Motion are:

### I.    PRELIMINARY STATEMENT

**A.    The Ohio Proceedings.**

The lawsuit predominately arises from newspaper reports of rulings by courts in Ohio that Plaintiff engaged in inappropriate conduct with his two minor children.  Specifically, the two reports quote from an Ohio appellate court's decision that affirmed a magistrate judge's ruling. The quoted language from the appellate court's decision ends with the following language:  "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children."

In Ohio, sexual contact such as described by the magistrate is a crime. Section 2907.01(B) of the Ohio Revised Code defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Section 2907.06 makes such contact a crime when the victim is a child.  Given the magistrate's description of what Plaintiff did – and after reading the Ohio law (or any other state's law, for that matter) – no reasonable person could conclude anything other than what Plaintiff did was criminal.

Indeed, it is hard to imagine what Plaintiff's explanation of his conduct could be, which probably explains why he consistently avoided testifying about this or otherwise telling the magistrate what he did and why.  As the magistrate noted, Plaintiff would not answer the question of what he thought "inappropriate touching" was, and he even invoked the Fifth Amendment to avoid answering the question.

In his presuit notice, which is a statutory condition precedent to suing for defamation and defamation by implication, Plaintiff identified only one statement he was intending to sue on: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  That statement appeared in only one of the reports.

Thus, as it relates to those reports, this lawsuit is about whether Plaintiff can sue Defendants for making that one statement in light of the magistrate's finding that Plaintiff's behavior was "grossly inappropriate," and the Ohio appellate court's decision affirming the magistrate.  He cannot, and the reasons he cannot is because the statement is truthful and cannot form the subject of a claim for defamation, because he does not identify any true statements of

fact as is necessary to state a claim for defamation by implication, and because his claims are barred by the substantial truth doctrine and the privilege for fair and accurate reports of official documents.

**B.      The Florida Disciplinary Proceedings.**

The remainder of the lawsuit arises from a report that Plaintiff – who is an attorney – was publicly reprimanded by the Florida Supreme Court for unethical conduct.  In publishing a report that Plaintiff was under investigation by the Arizona Bar, Defendants wrote, "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work."  It is undisputed that Plaintiff was publicly reprimanded by the Florida Supreme Court for violating a settlement agreement that was supposed to resolve a former client's Bar grievance that Plaintiff accepted a $25,000 retainer from the client, but did not provide any services.

Thus, as it relates to this statement, the lawsuit is about whether Plaintiff can sue Defendants because although he *was* under investigation by the Arizona Bar, and although he *was* reprimanded by the Florida Supreme Court for violating a settlement agreement with his former client, he was not reprimanded for not doing any work for the client.  He cannot, and the reason he cannot is because the report is substantially true.

## II.      INTRODUCTION

**A.      The Ohio Courts' Orders.**

As Plaintiff acknowledges in paragraph 32 of the Amended Complaint, a magistrate judge in Ohio found that Plaintiff engaged in inappropriate contact and conduct with his minor children.  This finding – and the others summarized below – was made after an eighteen day trial

in the course of litigation between Plaintiff and his former spouse (the mother of his children) relating to the issues of child custody and visitation.

Although Plaintiff did not attach a copy of the magistrate's order to the Complaint, Defendants have attached a copy as Exhibit 1, which the Court may consider at the motion to dismiss stage because not only is it referred to in the Amended Complaint, but it is central to Plaintiff's claims and its authenticity cannot be challenged. *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley*, 304 F.3d at 1134).

Additionally, Fed.R.Evid. 201(d) permits the Court, at the motion to dismiss stage, to take judicial notice of public records, including documents filed in proceedings pending in other courts.[1] *See, e.g., Beepot v. J.P. Morgan Chase National Corporate Services, Inc.*, 2011 WL 4529604 at \*5 (M.D. Fla. 2011) (collecting decisions); *Horne v. Potter*, 392 F.App'x 800, 802 (11th Cir. 2010); *Universal Express, Inc.*, 177 F.App'x 52, 53-54 (11th Cir. 2006); *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 2008 WL 4826115 at \*1 (M.D. Fla. 2008) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

The magistrate's ninety-three page written order details, among other things:

- Allegations that Plaintiff inappropriately touched his son's genitals;

- Allegations that Plaintiff kissed his son and daughter "all over" their bodies;

- Allegations that Plaintiff had his daughter wash his genitals;

- The children's pediatrician contacted a child welfare agency to report that Plaintiff had possibly molested his son;

---

[1] To the extent a formal request is necessary, Defendants hereby request, pursuant to Fed.R.Evid. 201(c)(2) and (d), that the Court take judicial notice of the contents of Exhibits 1 through 4, which are orders entered by Ohio state courts.

- A state social worker found that sexual abuse was indicated;

- One of Plaintiff's female friends took Plaintiff's nine year old daughter to a lingerie store and purchased thong underwear for the daughter, which Plaintiff encouraged his daughter to wear;

- Plaintiff's complete lack of credibility; and

- State and federal judges across the country having found Plaintiff to have acted with complete disregard for the judicial process.

The magistrate also addressed, in painstaking detail, each of the arguments Plaintiff made in response to these points, and why all of his arguments failed. On the basis of those and other findings, the magistrate ruled against Plaintiff in the litigation with his former spouse.

The trial court judge adopted the magistrate's report in its entirety (Exhibit 2).

Plaintiff appealed, and the appellate court affirmed in all respects (Exhibit 3). In affirming the portion of the magistrate's order relating to Plaintiff's inappropriate contact and conduct with his children, the appellate court wrote:

> **{¶23}** In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.

> **{¶24}** A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers* v. *Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. *See Seasons Coal Co.* v. *Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Cohen* v. *Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

> **{¶25}** The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual

abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify.   The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him.   In doing so, the magistrate found

> on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.

{¶26}  The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children.   The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriffs Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children.   "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was.   The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

{¶27}  After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶28}  Klayman's third assignment of error is overruled.

The Supreme Court of Ohio declined to hear the case (Exhibit 4).

## B.    The Articles Reporting The Ohio Proceedings, And Plaintiff's Pre-Suit Notice.

Defendants published articles relating to Plaintiff on September 28, 2012 and February 22, 2013.   The September 28 article is entitled "Bradlee Dean's attorney, Larry Klayman, allegedly sexually abused his own children" (Am. Compl., ¶10).   That article is attached to the Amended Complaint as Exhibit 1 [DE 14-1].   The February 22 article is entitled, "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids" (Am.

Compl., ¶13).   That article is attached to the Amended Complaint as the first two pages of Exhibit 4 [DE 14-4].

Each article notes Plaintiff's public involvement with controversial, politically conservative causes, and accurately quotes – at length – the portion of the appellate court's order affirming the findings that Plaintiff inappropriately touched his children.

The notice that Plaintiff sent to Defendants on March 4, 2013 pursuant to §770.01, Florida Statutes, identified *only* the following statement, which was contained in the September 28 article:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  A copy of the notice is attached to the Amended Complaint as the first two pages of Exhibit 3 [DE 14-3].  Plaintiff's notice did not identify any statements contained in the February 22 article.

**C.      Plaintiff Was Publicly Reprimanded By The Florida Supreme Court For Ethics Violations.**

Plaintiff acknowledges in paragraphs 15 and 16 of the Amended Complaint that he was publicly reprimanded by the Florida Supreme Court for ethics violations.  Although Plaintiff did not attach to the Amended Complaint the court records relating to his public reprimand, those documents are attached to this Motion as Exhibits 5 and 6, and may be considered in connection with this Motion through judicial notice and because they are expressly referred to in the Motion, are central to Plaintiff's claims, and their authenticity cannot be disputed.  *See, e.g.,* Fed.R.Evid. 201(d);[2] *Horsley*, 304 F.3d at 1134; *Day*, 400 F.3d at 1276; *Beepot*, 2011 WL 4529604 at *5;

---

[2] To the extent a formal request is necessary, Defendants hereby request, pursuant to Fed.R.Evid. 201(c)(2) and (d), that the Court take judicial notice of the contents of Exhibits 5 and 6, which are a referee's report and an order that were filed in Florida Supreme Court Case NO. SC11-247.

*Horne*, 392 F.App'x at 802; *Universal Express*, 177 F.App'x at 53-54; *Bray*, 2008 WL 4826115 at *1.

According to those court records, one of Plaintiff's clients filed a grievance with the Florida Bar "alleging that [Plaintiff] had had (sic) failed to provide services in her criminal case after she paid him a $25,000 retainer" (Exhibit 5, p. 2).  Plaintiff and the former client entered The Florida Bar Grievance Mediation Program, and Plaintiff agreed to pay her $5,000 (*Id.*, pp. 2-3).  Plaintiff did not pay all of the money he agreed to pay, which resulted in the opening of additional disciplinary proceedings relating to Plaintiff's violation of the settlement agreement (*Id.*, pp. 3-6).  After the Florida Bar made a probable cause determination and filed a formal complaint with the Florida Supreme Court, Plaintiff paid the balance owed under the settlement agreement (*Id.*, pp. 5-6).  The referee thereafter recommended that Plaintiff be found guilty of various ethics violations, and accepted Plaintiff's "Unconditional Guilty Plea and Consent Judgment for Discipline" (*Id.*, pp. 6-7).  The Florida Supreme Court approved the "uncontested referee's report" and reprimanded Plaintiff for ethics violations (Exhibit 6).

**D.    The Article Reporting The Public Reprimand, And Plaintiff's Pre-Suit Notice.**

Defendants published an article on June 18, 2013 reporting that Plaintiff was under investigation by the Arizona Bar [DE 14-2].  That article contains the following statement: "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work."

Plaintiff sent Defendants on July 2, 2013 a notice pursuant to §770.01.  The notice refers to the June 18 article, and identifies the statement that Plaintiff was publicly reprimanded "for taking money from a client, and never doing any work.'"   A copy of the notice is attached to the Amended Complaint as the last two pages of Exhibit 3 [DE 14-3].

8

E.     **Plaintiff's Amended Complaint.**

Plaintiff filed his three-count Amended Complaint on July 2, 2013 [DE 14].

Count I purports to state a claim for defamation against all six Defendants based on (a) the statement in September 28 article, "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (the "September 28 Statement"); and (b) the statement in the June 18 article that Plaintiff was publicly reprimanded "for taking money from a client, and never doing any work'" (the "June 18 Statement") (Am. Compl., ¶¶11-12, 14-16, 18-19).

Count II purports to state a claim for defamation against three of the six Defendants based on the June 18 Statement (*Id.*, ¶¶14-16, 23-26).

Count III purports to state a claim against all Defendants for defamation by implication based on the September 28 Statement and the June 18 Statement (*Id.*, ¶¶11-12, 14-16, 31-34).

Each count should be dismissed with prejudice.

## III.     ARGUMENT

## A.     SECTION 770.01 LIMITS THE SCOPE OF THE AMENDED COMPLAINT.

Before addressing Plaintiff's failure to allege the elements of claims for defamation and defamation by implication, it is important to address Plaintiff's failure to satisfy the statutory condition precedent for asserting such claims.  Specifically, §770.01, Florida Statutes, establishes a condition precedent to asserting claims for defamation *and* defamation by implication.  *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1112 (Fla. 2008) (holding that §770.01 applies to defamation by implication).   The statute provides:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing

on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

It is not enough under §770.01 that a notice merely identify the article containing the allegedly false and defamatory statements.  Instead, and as the statute expressly states, the notice must also specifically identify the allegedly false and defamatory statements contained in the article.  *See, e.g., Gannett Florida Corp. v. Montesano*, 308 So.2d 599, 599-600 (Fla. 1st DCA 1975) (finding 770 notice defective because although it identified the articles, it did not identify the specific statements alleged to be defamatory).

"Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action."  *See Mancini v, Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1377 (Fla. 4th DCA 1997); *see also Nelson v. Associated Press, Inc.*, 667 F.Supp. 1468, 1474-75 (S.D. Fla. 1987) ("Having failed to comply with §770.01, Plaintiff's claim against AP must fail, since the statute is a condition precedent to her maintaining the suit.").

As, applied here, §770.01 limits Plaintiff's claims to the September 28 Statement, bars any claims that purport to be premised upon any other statement published by Defendants, and bars the clam for defamation by implication.

1.      **Plaintiff's First Notice Identifies Only The September 28 Statement, Which Means He Can Sue Only On That Statement.**

Plaintiff sent Defendants a notice on March 4, 2013 pursuant to §770.01[3] [DE 14-3 (pp. 1-2)].  Although that notice mentions the September 28 and February 22 articles, the *only* statement identified in the notice is from the September 28 article:  "Turns out, gays aren't the

---

[3] The letter mistakenly cites §770.02, which relates to the type of damages that may be recovered if allegedly defamatory statements are retracted.

only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  Because §770.01 requires the plaintiff to identify the specific statements he/she will sue upon – and because the only statement specifically identified in Plaintiff's first notice is the September 28 Statement – Plaintiff is permitted to sue *only* on the September 28 Statement.  *See Montesano*, 308 So.2d at 599-600; *Nelson v. Associated Press, Inc.*, 667 F.Supp. at 1474-75.  Thus, the Amended Complaint should be dismissed to the extent it purports to state claims arising from any statements contained in the February 22 article.  *See, e.g.,* Am. Compl., ¶¶13, 18, 31.

### 2.   Plaintiff Cannot Sue For Anything In The June 18 Article Because He Filed The Amended Complaint On The Same Day He Served The Second Notice.

As quoted above, §770.01 requires the plaintiff to provide notice to the publisher "at least 5 days before instituting" a claim for defamation or defamation by implication.  Plaintiff's second notice relates to the June 18 Statement [DE 14-3 (pp. 3-4)].  That notice is dated July 2, 2013 (*Id.*), which means Plaintiff could not file suit until July 8.[4]  Plaintiff, however, filed the Amended Complaint on July 2, the same day on which he served the notice [DE 14].  As such, the portions of Counts I and III that are premised upon statements in the June 18 article, and the entirety of Count II, must be dismissed because Plaintiff filed those claims prior to the expiration of the notice period.[5]  *See, e.g., Canonico v. Callaway*, 26 So.3d 53, 55-56 (Fla. 2d DCA 2010).

---

[4] The fifth calendar day falls on a Sunday, so the expiration of the five-day period is calculated as July 8.  *See* Fla. R. Civ. P. 1.090(a); Fla. R. Jud. Admin. 2.514(a)(1); *Canonico v. Callaway*, 26 So.3d 53, 54-56 (Fla. 2d DCA 2010).

[5] The Amended Complaint is Plaintiff's first attempt to assert claims relating to the June 18 article.  The initial complaint [DE 1] did not – and could not – assert claims premised upon the June 18 article because that pleading was filed on March 20, 2013, three months before the article was published.

### 3. Neither Notice Identifies True Statements That Give Rise To A False Implication.

Count III purports to state a claim for defamation by implication.  As mentioned above, §770.01 applies to claims for defamation by implication.  *See Jews for Jesus*, 997 So.2d at 1112.  The tort requires the existence of "literally *true* statements [that] are conveyed in such a way as to create a false impression."  *See id.*, at 1108 (emphasis added).  In neither notice, however, did Plaintiff identify any literally true statements that he says create a false impression.  Instead, the notices identify only the September 28 and June 18 Statements, which the Amended Complaint alleges are false (Am. Compl., ¶¶12, 15-16, 19, 25-26).  Indeed, the July 2 notice [DE 14-3 (pp. 3-4)] expressly states that the June 18 Statement is false ("By blatantly publishing false statements about me . . . .").  Count III should be dismissed because Plaintiff did not satisfy the statutory condition precedent to asserting a claim for defamation by implication.

## B. COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION.

Count I purports to state a claim under Florida law for defamation premised upon the September 28 Statement *and* the June 18 Statement (Am. Compl., ¶¶11-12, 14-16, 18-19).  Count I fails on both fronts.

### 1. The September 28 Statement Is Not Actionable Because It Is True.

A claim for defamation must be premised upon a *false* statement of fact.  *See Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action"); *Johnson v. Clark*, 484 F.Supp.2d 1242, 1247 (M.D. Fla. 2007) (quoting *Byrd*, 433 So.2d at 595) (same).

 The September 28 Statement says:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  Plaintiff alleges that that statement is false

because he "has never been found by any legal entity or agency to have sexually abused his children," and he has never committed or been convicted of a crime relating to touching his children (Am. Compl., ¶¶12, 19). Plaintiff is wrong, and Count I fails because the September 28 Statement is true.

With respect to Plaintiff's first allegation of falsity – that he "has never been found by any legal entity or agency to have sexually abused his children" – the September 28 Statement does not say that Plaintiff "sexually abused" the children. It *does* say that he was found by Ohio courts to have inappropriately touched them and, in saying that, it accurately reports what the Ohio courts said. In affirming the magistrate's findings that Plaintiff inappropriately touched his children, the appellate court wrote – as quoted in the September 28 article – "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Ex. 3). The Statement is true and cannot be the basis of a claim for defamation.

With respect to Plaintiff's second allegation of falsity – that he has never committed or been convicted of a crime relating to touching his children – the Statement does not say that Plaintiff was convicted of a crime. Instead, it says Plaintiff engaged in "disturbing, criminal sexual behavior," which accurately describes the conduct in which the magistrate and appellate court said he engaged. The word "criminal" – as used in the Statement – is an adjective describing the behavior addressed by the Ohio courts; it is not an adjective describing Plaintiff or a pronoun substituting for his name.

Indeed, such conduct *is* criminal in Ohio, *see* Ohio Rev. Code, §§2907.01(B) and 2907.06, and it is hard to imagine that there are any jurisdictions in which an adult inappropriately touching a child is *not* criminal behavior. *See* §800.04(5), Florida Statutes. That

13

Plaintiff was not charged with or convicted of a crime does not mean that he did not engage in disturbing, criminal sexual behavior.  He did engage in such behavior, and when given the opportunity to deny that he inappropriately touched his children, he invoked his Fifth Amendment rights, which means he believed testimony about the touching could incriminate him.

Count I should be dismissed with prejudice to the extent it is premised upon the September 28 Statement because the statement is true.

> **2.     The September 28 Statement Is Not Actionable Because It Is A Fair And Accurate Report Of Official Documents.**

"[M]any safeguards and privileges have been established throughout the years that have effectively balanced the right of individuals to be free from defamatory statements against the rights guaranteed by the First Amendment to freedom of expression."  *See Jews for Jesus*, 997 So.2d at 1111.  One of these privileges is for fair and accurate reports of government activities and documents.  *Id*. at 1111.

The press has a privilege to report on the contents of government documents, so long as the report of the document is fair and accurate.  *See Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 502 (Fla. 3d DCA 1993); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 977 (Fla. 3d DCA 1987); *Huszar v. Gross*, 468 So.2d 512, 515-16 (Fla. 1st DCA 1985); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997).  This privilege applies even if the content of the documents is erroneous; and the press has no duty to determine the accuracy of the content before publishing fair and accurate reports of it.  *See Woodard*, 616 So.2d at 502-03; *Ortega*, 510 So.2d at 976.

The September 28 article was a fair and accurate report of the appellate court's order, which stated that it was affirming the magistrate's finding that Plaintiff inappropriately touched

his children.   The September 28 Statement's description of Plaintiff's behavior as being

"criminal" fairly and accurately characterizes the inappropriate conduct described in the court

orders.  *See, e.g.,*Ohio Rev. Code, §§2907.01(B) and 2907.06.  Count I should be dismissed with

prejudice to the extent it is premised upon the September 28 Statement because the statement is a

fair and accurate report of government documents.

> **3.     The September 28 And June 18 Statements Are Not Actionable Because They Are Substantially True.**

Count I fails in its entirety for the additional reason that even if the September 28 and

June 18 Statements are not "perfectly accurate," they are substantially true, and that is all the law

requires.

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if

the 'gist' or the 'sting' of the statement is true."  *Smith v. Cuban American National Foundation*,

731 So.2d 702, 706 (Fla. 3d DCA 1999) (citing *Masson v. New Yorker Magazine*, 501 U.S. 496,

517 (1991)); *see also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999)

(applying Florida law).   "According to U.S. Supreme Court and Florida case law, falsity exists

only if the publication is substantially and materially false, not just if it is technically false."

*Smith*, 731 So.2d at 707.  Put another way, "[a] 'statement is not considered false unless it would

have a different effect on the mind of the reader from that which the pleaded truth would have

produced.'"  *Id.* (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).  Thus,

instead of requiring perfect accuracy, what Florida "'law requires is that the publication shall be

substantially true, and that mere inaccuracies, not affecting materially the purport of the article,

are immaterial.'"  *McCormick v. Miami Herald Publishing Co.*, 139 So.2d 197, 200 (Fla. 2d

DCA 1962) (quoting 53 C.J.S. Libel and Slander §122).

The "gist" or "sting" of the September 28 Statement – in the context of the September 28 article in which it appears[6] – is that courts in Ohio found that Plaintiff inappropriately touched his children.  That is, in fact, what those courts wrote in their orders.  Plaintiff – who invoked the Fifth Amendment rather than testify about what he did – alleges that the September 28 Statement is nonetheless actionable because, by describing his behavior as criminal, it inaccurately states that he committed a crime or was convicted for inappropriately touching his children.  The substantial truth doctrine exists exactly for this type of situation.

The effect of the September 28 Statement – and the article's lengthy quotations from the appellate court's decision – on the mind of the reader is that Plaintiff inappropriately touched his children.[7]  Excluding the word "criminal" from the Statement – such that it would read:  "Turns out, gays aren't the only ones capable of disturbing sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" – does not produce a different effect on the mind of the reader.  The gist or sting remains the same:  Plaintiff inappropriately touched his children.

Similarly, the gist or sting of the June 18 Statement is that Plaintiff was publicly reprimanded violating the ethical rules governing attorney conduct.  Plaintiff admits he was

---

[6] In evaluating the meaning of a statement, including any defamatory meaning, the statement must be viewed in the totality of the publication in which it appears.  *See Byrd*, 433 So.2d at 595; *Smith*, 731 So.2d at 705.

[7] Whether a statement is capable of defamatory meaning is a question of law that the court must resolve in the first instance.  *See, e.g., See, e.g., Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 583 (5th Cir. 1968); *Silvester v. American Broadcasting Companies*, 650 F.Supp.2d 766, 770 (S.D. Fla. 1986) ("Under Florida law, the statement at issue in a libel suit must be reasonably capable of a defamatory interpretation.  This determination is to be made by the court in the first instance . . . ."); *Byrd*, 433 So.2d at 595 (quoting *Wolfson v. Kirk*, 273 So.2d 774, 778 (Fla. 4th DCA 1973)) ("'Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in . . .  dismissing the complaint for failure to state a cause of action . . . .'").

publicly reprimanded by the Florida Supreme Court for ethics violations, but alleges that the June 18 Statement is nonetheless false because he was publicly reprimanded for violating an agreement with a former client to settle a Bar grievance, and not for failing to do any work for the client.

The effect of the June 18 Statement on the mind of the reader is that Plaintiff was publicly reprimanded by the Florida Supreme Court for ethics violations.  Had the June 18 article reported that Plaintiff was reprimanded for violating an agreement with a client to settle a prior Bar grievance – instead of for not doing any work for the client – it would not have produced a different effect on the mind of the reader.  The gist or sting remains the same:  Plaintiff was publicly reprimanded by the Florida Supreme Court because he violated the rules of ethics.

Thus, even if the September 28 and June 18 Statements are not perfectly accurate, Count I nonetheless fails because the statements are substantially true.

## C.    COUNT II FAILS TO STATE A CLAIM FOR DEFAMATION.

Count I purports to state a claim against *all* six Defendants for defamation arising, in part, from the June 18 Statement (Am. Compl., ¶¶15-16, 18-19).  Count II purports to state a claim against three of those Defendants for defamation arising from the June 18 Statement (*Id.*, ¶¶15-16, 23-25).   Because Counts I and II assert identical claims against those three Defendants, Count II should be dismissed because it is duplicative of Count I.  *See, e.g., Berry v. Demings*, 2012 WL 4458374 at *5 (M.D. Fla. 2012) (dismissing count in complaint as duplicative of different count contained in same pleading); *Bush v. City of Daytona Beach*, 2013 WL 3209430 at *2 (M.D. Fla. 2013) (same); *Giambra v. Wendy's International, Inc.*, 2009 WL 1686677 at *2 (M.D. Fla. 2009) (same).

Additionally, even if Count II were not duplicative of Count I, it nonetheless fails for the reasons addressed above:   (1) Plaintiff asserted the claim within §770.01's five-day period (III.A.2), *see Canonico*, 26 So.3d at 55-56; and (2) the June 18 Statement is not actionable because it is substantially true (III.B.3), *see Smith*, 731 So.2d at 706-07; *McCormick*, 139 So.2d at 200.

**D.    COUNT III FAILS TO STATE A CLAIM FOR DEFAMATION BY IMPLICATION.**

Count III purports to state a claim for defamation by implication against all Defendants premised upon the September 28 and June 18 Statements.   There are three reasons Count III fails.   First, it fails because Plaintiff alleges that the Statements are false.   Second, it fails because the Statements are substantially true.   Third, it fails to the extent it is premised upon the June 18 Statement because that statement is a fair and accurate report of a government documents.

**1.      Count III Fails Because Plaintiff Alleges That The Statements Are True.**

Whereas a claim for defamation requires false statements of fact, a claim for defamation by implication requires "literally *true* statements [that] are conveyed in such a way as to create a false impression."   *See Jews for Jesus*, 997 So.2d at 1108 (emphasis added).   Count III is premised upon the September 28 and June 18 Statements, and it fails to state a claim because Plaintiff alleges that the Statements are false.

Specifically, paragraphs 12 and 19 of the Amended Complaint allege that the September 28 Statement is false.   Paragraphs 15, 16, and 26 of the Amended Complaint allege that the June 18 Statement is false.   Those allegations have been made part of Count III by operation of paragraph 31, which is contained within Count III and states "Plaintiff Klayman realleges and reavers paragraphs 1 through 30 of this complaint as if fully incorporated herein."   In light of Count III's allegations that the September 28 and June 18 Statements are <u>false</u>, the claim

necessarily fails because defamation by implication requires *true* statements.[8]  Put another way, the elements of the claim require Plaintiff to allege that the Statements are literally true, which he does not and will not do.  As such, Count III should be dismissed with prejudice.

       **2.**       **Count III Is Barred By The Substantial Truth Doctrine.**

Even if Plaintiff alleged that the September 28 and June 18 Statements were literally true, but created a false impression, Count III would nonetheless have to be dismissed for the additional reason that, as addressed in greater detail above (III.B.3), any impression created by those Statements is substantially true, and that is all the law requires.  *See Smith*, 731 So.2d at 706-07; *McCormick*, 139 So.2d at 200.

       **3.**       **The Privilege For Fair And Accurate Reports Of Official Documents Bars Count III Fails To The Extent It Os Premised On The September 28 Article.**

The privilege for fair and accurate reports applies to claims for defamation by implication.  *See Jews for Jesus*, 997 So.2d at 1111.  Count III is premised, in part, on the September 28 Statement.  That portion of Count III fails because, as discussed in greater detail above (III.B.2), the September 28 Statement's description of Plaintiff's behavior as being "criminal" fairly and accurately characterizes the inappropriate conduct described in the Ohio courts' orders.  *See, e.g.,* Ohio Rev. Code, §§2907.01(B) and 2907.06.  Thus, the portion of Count III premised upon the September 28 Statement should be dismissed with prejudice.

## IV.    CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

---

[8] This is one of the risks of shotgun pleading, where each count incorporates the allegations of every preceding count.  *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendants
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/ Scott D. Ponce
Sanford L. Bohrer (FBN 160643)
Scott D. Ponce (FBN 0169528)
Email: sbohrer@hklaw.com
Email: sponce@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

/s/ Scott D. Ponce

#23885671_v1