# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

LARRY KLAYMAN,

        Plaintiff,

v.                                            Case No:  5:13-cv-143-Oc-22PRL

CITY PAGES, KEN WEINER, AARON
RUPER, PHOENIX NEW TIMES,
MATHEW HANDLEY and VOICE
MEDIA GROUP,

        Defendants.

_____/

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. No. 15). Plaintiff Larry Klayman ("Plaintiff") responded in opposition. (Doc. No. 22). The Court will grant Defendants' Motion to Dismiss based on the reasoning provided herein.

### I. BACKGROUND

Plaintiff brings this defamation action against six defendants. Each defendant is associated with Defendant Voice Media Group ("VMG"), a privately held media company. (Doc. No. 14 at ¶ 9). VMG owns Defendant City Pages ("CP"), a Minneapolis, Minnesota publication, and Defendant Phoenix New Times ("PNT"), a publication based in Phoenix, Arizona. (*Id.* at ¶¶ 5, 6). Defendants Ken Weiner[1] and Aaron Rupar are reporters and writers for CP. (*Id.* at ¶¶ 3, 4). Defendant Matthew Hendley is a reporter and writer for PNT. (*Id.* at ¶ 7).

---

1 Plaintiff alleges that Ken Weiner is an alias for "Ken Avidor" and refers to him as "Defendant Avidor" in the Complaint.

This case arises from three separate news articles about various judicial proceedings in Ohio and Florida. The Ohio proceedings involved a domestic dispute between Plaintiff and his former wife. In 2010, an Ohio state magistrate judge rendered a 93-page report in that case. The state trial judge adopted the magistrate's report in its entirety and the Ohio appellate Court affirmed the trial court's decision. This defamation action originates from the appellate court's decision, which found "no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched [his] children."[2] (Doc. No. 15-4 at p. 12).

---

2 Not to take this statement out of context, the Ohio appellate court wrote:

> {¶23} In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.
>
> . . . .
>
> {¶25} The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify. The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him. In doing so, the magistrate found "on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper."
>
> {¶26} The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children. The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriffs Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children. "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was. The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

On September 28, 2012, CP published an article, written by Defendants Ken Weiner[3] and Aaron Rupar, titled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children" (the "September 28 Article"). (Doc. No. 14-1). On February 22, 2013, PNT published an article, written by Defendant Matthew Hendley, titled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have 'Inappropriately Touched' Kids" (the "February 22 Article"). (Doc. No. 14-4).

On March 4, 2013, pursuant to Florida Statutes Section 770.01, Plaintiff sent a letter to Defendants putting them on notice that they had allegedly published defamatory statements about Plaintiff in the September 28 and February 22 Articles. (Doc. No. 14-3 at pp. 1-2). As required by the notice statute, Plaintiff specifically identified the statement he alleged was defamatory: "Turns out, gays aren't the only ones capable of disturbing criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps." (*Id.* at p. 2). This statement appeared in the September 28 Article but not the February 22 Article. (*Compare* Doc. No. 14-1 *with* Doc. 14-4). Shortly thereafter, on March 20, 2013, Plaintiff filed his original Complaint. (Doc. No. 1).

On June 18, 2013, and after this action originally commenced, PNT published the final article in question: "Larry Klayman Under Investigation by Arizona Bar" (the "June

---

{¶27} After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶28} Klayman's third assignment of error is overruled.

(Doc. No. 15-4 at pp. 11-12) (alterations in original).

3 Ken Weiner is alleged to have "co-authored" the September 28, 2013 article. (Doc. No. 14 at ¶ 3). However, the portion of the article attributed to Ken Weiner appears to only be emphasized portions of the magistrate judge's findings. (Doc. No. 14-1 at p. 2). It is unclear to the Court if Ken Weiner actually co-authored the September 28 article, or if his attributions are from some other unknown article.

18 Article"). (Doc. No. 14-2). Defendant Michael Hendley wrote the June 18 Article. *Id.* This article referenced Florida Bar disciplinary proceedings and the Supreme Court of Florida's public reprimand of Plaintiff.[4] In an effort to comply with Florida Statutes Section 770.01, Plaintiff sent a letter to Defendants PNT, VMG, and Michael Hendley on July 2, 2013, identifying the June 18 article. (Doc. No. 14-3 at p. 3). The letter specifically stated that the "defamatory statements represent and/or give the false inference that [Plaintiff] was reprimanded for 'taking money from a client, and never doing any work.'" *Id.* On the same day, Plaintiff filed his Amended Complaint in this Court. (Doc. No. 14).

The Amended Complaint alleges three Counts of defamation under Florida law. Because each subsequent Count of the Complaint "realleges and reavers" each of the allegations contained within the preceding Counts, the Court will try to piece together Plaintiff's allegations. (*See id.*). Count I is a claim against "each and every defendant."

---

4 The following is Plaintiff's version of the events:

> As made clear in the public reprimand which was at Defendants disposal, Plaintiff had entered into a settlement agreement with a former client, Natalia Humm, wherein Plaintiff agreed to pay $5,000 out of a $25,000 non-refundable retainer, at the urging of a Florida Bar mediator to amicably resolve this matter and to put the matter behind him. At the time, Plaintiff believed that he could pay the amount to the former client. Plaintiff had made ongoing installment payments to the former client, and there was not much left that remained to be paid. Even more, Ms. Humm's subsequent attorney admitted that Plaintiff did not owe her any money, as set forth in the public reprimand. However, the bar filed a complaint after its correspondence, which could have averted the complaint, did not reach Plaintiff due to changes of address and the subsequent confusion this caused. Thus the complaint was filed after Plaintiff did not timely respond.
>
> Importantly, as set forth in the public consent judgment, the lawyer who succeeded Plaintiff in the representation of the client admitted to Plaintiff that Plaintiff did not owe the client a refund and that he did not expect Plaintiff to make payment. Notwithstanding this, Plaintiff had every intention to pay the agreed upon amount to the client. However, a severe recession hit the economy and Plaintiff had personal issues, which prevented timely payment. In short, the reprimand did not result from dishonesty or any other egregious ethical violation; rather it was just a matter of not having the money to timely pay the settlement.

(Doc. No. 22 at p. 6) (internal citations omitted).

- 4 -

(*Id.* at p. 8). This Count appears to be a defamation action arising from both the September 28 Article and the February 22 Article. Count II is a defamation claim against Defendants Michael Hendley, PNT, and VMG, related to the June 18 Article. (*Id.* at ¶ 24). Count III is defamation by implication claim against "each and every defendant." (*Id.* at pp. 12-13). This Count appears to be based on all three news articles.

## II. **DISCUSSION**

Prior to filing a defamation action, a plaintiff must provide a defendant written notice of the alleged defamatory statements. Section 770.01, Florida Statutes, provides:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

This statutory notice is a condition precedent to suit, *Canonico v. Callaway,* 26 So.3d 53, 54 (Fla. 2d DCA 2010), and it applies to both defamation and defamation by implication actions. *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008) ("All of the protections of defamation law that are afforded to the media and private defendants . . . extend[] to the tort of defamation by implication"). "Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action." *Mancini v. Personalized Air Conditioning & Heating, Inc.,* 702 So.2d 1376, 1377 (Fla. 4th DCA 1997).

Initially, the Court must dismiss Count II in its entirety because Plaintiff failed to give Defendants the requisite pre-suit notice. Plaintiff sent a letter to Defendants PNT, VMG, and Michael Hendley on July 2, 2013, identifying the alleged defamatory statement in the June 18 article. (Doc. No. 14-3 at p. 3). Thus, Plaintiff was required by Florida law to wait at least 5 days before instituting this action. Fla. Stat. § 770.01.

However, Plaintiff filed his Amended Complaint on the same day, adding claims arising from the June 18 Article. Plaintiff argues that "[s]ince the Defendants failed to respond in any way to the first notice sent by the Plaintiff, it was clear that no amount of notice would entice the Defendants to retract the false statements that were made . . . . As such, the additional four days that Defendants claim are required . . . have no bearing on the outcome of the case." (Doc. No. 22 at pp. 19-20). This argument is without merit. The Florida Legislature did not write the notice statute with permissive language. To the contrary, the statute is mandatory and specifically states the prerequisites for filing a defamation claim under Florida law. Plaintiff failed to meet the statutory requirements and thus Count II must be dismissed for failure to state a cause of action. *See Mancini,* 702 So.2d at 1377.

Similarly, the Court finds that Plaintiff failed to comply with the pre-suit notice requirement for the February 22 Article. Florida Statute 770.01 not only requires a plaintiff to specify the article but also "the statements therein which he or she alleges to be false and defamatory." Fla. Stat. § 770.01. In Plaintiff's first notice letter, he identifies the following statement as defamatory: "Turns out, gays aren't the only ones capable of disturbing criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."[5] (Doc. No. 14-3 at p. 2). This statement appeared in the September 28 Article but did not appear anywhere in the February 22 Article. In Plaintiff's March 4, 2013 letter, he does not specifically identify any statement other than the statement above. (*See id.* at pp. 1-2). Thus, Plaintiff failed to meet the pre-suit notice requirement for the February 22 Article because he did not

---

[5] Plaintiff did comply with the pre-suit notice requirements for the September 28 Article because he specifically identified the alleged defamatory statement and filed this action sixteen days after giving written notice to Defendants.

identify any statement that he alleges to be false or defamatory. It appears to the Court that Counts I and III allege defamation based on the February 22 Article. Consequently, the Court must dismiss those Counts for failure to state a cause of action. *See Mancini,* 702 So.2d at 1377.

Finally, the Court notes that Plaintiff's "shotgun" style pleading is an insufficient form of pleading.[6] The Court had great difficulty ascertaining which Count of the Complaint stated a cause of action for the various articles because each subsequent Count "realleges and reavers" each of the allegations contained within the preceding Counts. This form of pleading is insufficient. Even though this is a *pro se* pleading, Plaintiff readily declares that he has been practicing law for approximately 36 years. (Doc. No. 22 at p. 2). The Court will allow Plaintiff to file a Second Amended Complaint after meeting the requirements set forth in Florida Statute 770.01. Failure to correct the legal deficiencies in the Complaint and to comply with pleading standards may result in dismissal of this action with prejudice.

### III.    CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 15), filed on July 16, 2013, is **GRANTED to the extent provided in this Order.**

2. Plaintiff's Amended Complaint (Doc. No. 14), is **DISMISSED without prejudice.**

---

[6] In the Eleventh Circuit, shotgun pleadings are "altogether unacceptable." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Cook v. Randolph County*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases).

3. Plaintiff is **GRANTED** leave to file a Second Amended Complaint on or before December 5, 2013, consistent with the *Federal Rules of Civil Procedure*. This represents a chance for Plaintiff to remedy the pleading deficiencies identified herein. Failure to file a Second Amended Complaint by December 5, 2013 may result in the dismissal of this case without further notice.

**DONE** and **ORDERED** in Orlando, Florida on November 15, 2013.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties