**IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

CASE NO. 5:13-CV-00143-ACC-PRL

LARRY KLAYMAN,

               Plaintiff,

v.

CITY PAGES, et. al.

               Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## INTRODUCTION

This lawsuit arises from Defendants' willful and wanton publication of false and per se defamatory statements regarding Plaintiff in three separate, widely circulated articles, which falsely accused Plaintiff of committing a crime and/or being convicted of a crime by sexually abusing his own children, and stealing money from a client he was legally representing. Defendants intentionally publicized these false statements to harm Plaintiff, his reputation, and his standing as a reputable lawyer.

As a result of Defendants' wide dissemination of the above defamatory accusations, Plaintiff has been harmed in his reputation, particularly as an attorney and civil rights activist, in addition to being injured in his personal, social, official, and business relations. The damage having been done, Defendants now disingenuously seek for the second time, to dismiss Plaintiff's claims. However, in their desperate attempt to summarily dismiss this action and deny Plaintiff his day in court, Defendants misrepresent facts, omit significant details, and intentionally distort well-established law. Thus, Defendants' Motion to Dismiss the Second Amended Complaint must be denied.

1

## STATEMENT OF FACTS

Plaintiff is a lawyer licensed to practice in Florida (and in other jurisdictions) and has at all times been a member in good standing throughout his approximate 36-year career as an attorney. Second Amended Complaint ("SAC") ¶2. Plaintiff practices law continuously and extensively, throughout the country and within Florida and resides in and does business in this judicial district. SAC ¶2. In 2004, Plaintiff ran as a candidate for the U.S. Senate in Florida in the Republican primary. SAC ¶2.

Defendants are radical pro-homosexual activists and supporters of the pro-illegal immigration movement and, as a result, sought to punish Plaintiff for his conservative views and legal advocacy of conservative positions by destroying Plaintiff's reputation, both personally and professionally, while perpetuating their own political agenda.  SAC ¶ 9. In order to achieve their goal to harm Plaintiff, Defendants willfully published three separate and widely circulated defamatory articles, entitled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused his own Children," dated September 28, 2012, "Birther Lawyer Fighting Joe Arpaio Recall was Found to have 'Inappropriately Touched' his Kids," dated February 22, 2013, and "Larry Klayman Under Investigation by Arizona Bar," dated June 18, 2013. SAC ¶¶10, 11, 13, 14. In these articles, Defendants deliberately published false statements accusing Plaintiff of committing and/or being convicted of a crime as well as stealing from a client he was legally representing.  SAC ¶¶ 10,15.

### A. *Defendants' September 28, 2012 Article Entitled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children."*

Plaintiff has been legally representing Bradlee Dean ("Dean"), a Christian preacher and musician who, through his ministry "You Can Run But You Cannot Hide," teaches children Judeo-Christian ethics and morals. SAC ¶10. Moreover, Dean is recognized for his advocacy in

opposing the radical gay agenda of promoting homosexual behavior and lifestyle in children in schools. *Id.* Dean sought to bring attention to the dangers of encouraging homosexuality to young, vulnerable, and susceptible children, setting children on a path ridden with emotional distress, depression, and potentially suicidal tendencies. *Id.*

On September 28, 2012, Defendants published an article entitled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused his own Children," which falsely stated that Plaintiff had sexually abused his own kids. SAC ¶10,11. The article concluded with the statement, **"[t]urns out, gays aren't the only ones capable of disturbing, criminal sexual behavior-apparently even conservative straight guys tight with Bradlee Dean turn out to be total creeps."** SAC ¶11(Emphasis added). This article was clearly intended to harm Plaintiff personally and professionally because of his legal representation of Bradlee Dean in *Bradlee Dean, et al. v. NBC Universal, et al.* (D.C. Superior Court, No. 2011 CA 006055B). SAC ¶10.

Despite Defendants' false accusation, Plaintiff has never been found by any legal entity or agency to have sexually abused his children, much more committed or been convicted of a crime in this regard. SAC ¶12. Contrary to Defendants' publication, Plaintiff was cleared of these false charges by the Cleveland Department of Children and Families, the Cuyahoga County Sheriff's Department, and the District Attorney, all of whom dismissed these false and unsubstantiated allegations made by Plaintiff's ex-wife during a highly contested custody proceeding. SAC ¶12; Exhibit 1. Further, Plaintiff voluntarily took and passed a polygraph test, evidencing that Plaintiff did not sexually abuse his own children. SAC ¶12; Exhibit 2. Importantly, the entirety of the evidence clearing Plaintiff of all charges was part of the court record. As significantly, Plaintiff's children even admitted that Plaintiff's ex-wife had attempted to coach them regarding the sexual abuse allegations, but they, themselves, could not remember

nor did they know of any inappropriate touching by Plaintiff. In fact, they themselves denied the accusations. *Id.*

Undoubtedly, evidence regarding the truth of whether Plaintiff committed and/or was convicted of the accused crime, is readily available and accessible to the public, and particularly to Defendants, who purport to be investigative "journalists."  SAC ¶16. Defendants intentionally ignored readily available documents evidencing the falsity of Defendants' accusations and instead, willfully falsified facts, and omitted significant details in their publications in order to intentionally discredit Plaintiff and severely harm his reputation. SAC ¶21.

Moreover, Defendants omitted to state that the referenced finding of the Cleveland magistrate and judge remains subject to court challenge, that the magistrate who made the initial finding was biased and prejudiced against Plaintiff Klayman for his political and religious beliefs. SAC ¶¶43, 49. Most significantly, the magistrate's decision never states that Plaintiff had committed sexual abuse. Other omissions by Defendants include, but are not limited to, the magistrate having made a myriad of biased and prejudiced remarks about Plaintiff Klayman and, as set forth above, that Plaintiff Klayman had taken a polygraph which confirmed that he did not sexually abuse and/or inappropriately touch his children's private parts, and that the matter had been thoroughly investigated by the Cleveland Department of Families and the Cuyahoga County Sheriff and District Attorney, all of whom came to identical findings and conclusions. *Id.*

**B.** ***Defendants' February 22, 2013 Article Entitled "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have Inappropriately Touched His Kids."***

On February 22, 2013, Defendants published yet another article, entitled "Birther Lawyer Fighting Joe Arpaio Recall was Found to have 'Inappropriately Touched' his Kids," again seeking to attack Plaintiff for his legal advocacy. SAC ¶13.  Specifically, Plaintiff represents a group of Arizona citizens, "The Citizens to Protect Fair Election Results," who oppose an illegal

recall petition to remove Sheriff Joe Arpaio in Maricopa County, Arizona. *Id.* Specifically,

Sheriff Joe Arpaio is known for his strong enforcement of immigration laws in Arizona and is

supported by many Arizona residents, as evidenced by his continued reelection as Sheriff. *Id.*

Defendants have shown a malicious hatred for Sheriff Arpaio, particularly as a result of

Defendants' pro-illegal immigration legal position and law enforcement activities.

Defendants obviously viewed Plaintiff as aiding the sheriff in the election recall matter

and, once again, sought to impair Plaintiff's reputation and impede on his legal representation.

*Id.* In their February 22, 2013 article, Defendants admit that they were corroborating with their

sister publication, City Pages, from which they received information about Plaintiff's alleged

child sex abuse. *Id.* In fact, this article links and thus publishes the previously published libelous

article of September 28, 2012 and thus, Defendants once again libeled, defamed, and defamed

Plaintiff by implication through this republication, further injuring Plaintiff and harming his

reputation by republishing these false accusations. *Id.*

### C. *Defendants' June 18, 2013 Article Entitled "Larry Klayman Under Investigation By Arizona Bar."*

On June 18, 2013, Defendants published another article entitled "Larry Klayman Under

Investigation By Arizona Bar," which contained the false statement that "Klayman's been in

trouble with a Bar association before, as he was publicly reprimanded by The Florida Bar in

2011 for **taking money from a client, and never doing any work**." SAC ¶¶ 14,15 (Emphasis

added).  Defendants have at their disposal the public reprimand (attached as Exhibit 3) that was

referenced in their June 18, 2013 article and, as a result, were fully informed of the falsity of

their statement but knowingly and willingly proceeded to publish the defamatory article. SAC

¶16.  In fact, the public information, which was available to Defendants, clearly evidenced that

Plaintiff did do considerable work for his client and that Defendants' accusation was not the basis of The Florida Bar matter. *Id.*

      As made clear in the public reprimand which was at Defendants' disposal, Plaintiff had entered into a settlement agreement with a former client, Natalia Humm, wherein Plaintiff agreed to pay $5,000 out of a $25,000 non-refundable retainer, at the urging of a Florida Bar mediator to amicably resolve this matter and to put the matter behind him. Exhibit 4; Klayman Aff. ¶5. At the time, Plaintiff believed that he could pay the amount to the former client. *Id.* Plaintiff had made ongoing installment payments to the former client, and there was not much left that remained to be paid. *Id.* Even more, Ms. Humm's subsequent attorney admitted that Plaintiff did not owe her any money, as set forth in the public reprimand. *Id.* However, the bar filed a complaint after its correspondence, which could have averted the complaint, did not reach Plaintiff due to changes of address and the subsequent confusion this caused. *Id.* Thus the complaint was filed after Plaintiff inadvertently did not timely respond. *Id.*

      Importantly, as set forth in the public consent judgment, the lawyer who succeeded Plaintiff in the representation of the client admitted to Plaintiff that Plaintiff did not owe the client a refund and that he did not expect Plaintiff to make payment. Notwithstanding this, Plaintiff had every intention to pay the agreed upon amount to the client. However, a severe recession hit the economy and Plaintiff had personal issues, which prevented timely payment Klayman Aff. ¶4. In short, the reprimand did not result from dishonesty or any other egregious ethical violation; rather it was just a matter of not having the money to timely pay the settlement. *Id.* Indeed, the public reprimand, which Defendants had at their disposal, clearly states the many mitigating circumstances with regard to the Florida matter including: absence of prior disciplinary record, personal or emotional problems, character or reputation, and remorse. *Id.*

Regrettably, these despicable and outrageous false statements were widely circulated, both nationally and internationally, and publicized in print, on the internet, through e-mail subscriptions, and at nationwide events, particularly given the extensive distribution and readership of Defendants' publications. SAC ¶22.  Defendant Voice Media Group's holdings include Defendant City Pages and Phoenix New Times as well as Village Voice, LA Weekly, SF Weekly, and other New Times publications throughout the United States. SAC ¶9. Further perpetuating the dissemination of Defendants' defamatory statement, and thus, further harming Plaintiff's reputation, is the fact Defendant Voice Media Group, a privately held media company, reaches more than seven million monthly readers in print and 16 million unique desktop visitors each month, in addition to 1.2 million e-mail subscribers, more than 5.7 million visits on mobile, and more than forty signature food, music, and arts events per year nationwide. SAC ¶9.

Moreover, since the publication of Defendants' defamatory articles, many other internet and written publication have willfully used and published the false and misleading statements, especially publications supporting the radical gay and pro-illegal immigration agenda. SAC ¶9. These publications include, but are not limited to: "Right Wing Watch," "The Dump Bachmann Blog," "Wonkette," "Baltimore Sun Blow," "People of the American Way" and a host of others. SAC ¶22.

There is no doubt that Plaintiff has been severely harmed as a result of Defendants' defamatory statements, which have considerably lowered him in the estimation of the community, injured him in his occupation as a leading lawyer, and subjected him to hatred, ridicule, and contempt. SAC ¶¶21, 30.  More specifically, Defendants' tirade of defamatory statements did, in fact, extensively harm Plaintiff's reputation, cripple his integrity as a lawyer, and impair his credibility in a manner that impeded on Plaintiff's ability to  practice law. *Id.*

Furthermore, Defendants' spreading of libelous and defamatory material about Plaintiff has

caused serious injury to his profession and community standing and has adversely affected his

legal advocacy, leading the public to question his fitness to practice law. *Id.*

Given Defendants' outrageous conduct, Plaintiff filed a Complaint to redress the harm

caused by Defendants' defamatory statements. Defendants, however, now disingenuously seek to

dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

("FRCP") in their desperate attempt to summarily dismiss the Complaint and deny Plaintiff his

day in court. Defendants not only misrepresent key facts and omit significant details, but also

intentionally distort well-established law.

## ARGUMENT

## I.   PLAINTIFF'S SECOND AMENDED COMPLAINT ADDRESSES AND REMEDIES THE COURT'S CONCERNS ABOUT "SHOTGUN" PLEADING.

As a preliminary matter, the Court stated in its Order of November 15, 2013 that

Plaintiff's Amended Complaint required revision to clarify the multiple claims against

Defendants.  Order Nov. 15, 2013 at pp. 7.  Plaintiff took great pains to make it easy for the

Court, in each count, to see what Plaintiff is claiming is the defamatory statement, and went well

above the notice pleading standard required in FRCP Rule 8.  Defendants allege, in their Motion

to Dismiss the Amended Complaint, that Plaintiff continues this practice.  Mot. Dis. Amend.

Compl. at 9 fn. 3.  However, Plaintiff takes issue with this disingenuous allegation.  Plaintiff

only incorporated the relevant set of operative facts, a standard pleading practice, within each

count of the Second Amended Complaint.  In addition, Plaintiff only and specifically cited only

the relevant articles that were necessary for each count, and since the subsequent defamatory

articles referred back, and reincorporated previous ones, they are required to be included within

the subsequent counts of the Second Amended Complaint.  A review of each count  of the

Second Amended Complaint will bear that out. In sum, the Court can see in each count the specific defamatory statement which is at issue and thus Plaintiff has followed the Court's instruction.

## II.    DEFENDANTS' STATEMENTS WERE PER SE DEFAMATORY

The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010) citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

A statement is *per se* defamatory if "it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity." *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953) citing Restatement, Torts, Section 570.

"The significance of the classification of a communication as actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage because malice and the occurrence of damage are both presumed from the nature of the defamation." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 4th Dist. 1973) citing *Sharp v. Bussey*, 137 Fla. 96 (Fla. 1939); *Johnson v. Finance Acceptance Co. of Georgia*, 1935, 118 Fla. 397, 159 So. 364.  "Such a presumption is not an ordinary presumption of fact, but is a presumption of law and is not, therefore, dispelled by the production of evidence." *Id.*

Here, the requirements for defamation and defamation per se are clearly satisfied as Defendants have falsely imputed that Plaintiff committed and/or was convicted of committing a criminal offense amounting to a felony (i.e. sexually abusing his own children) in addition to imputing false and defamatory statements about Plaintiff in his trade and profession. Moreover, the statements were undoubtedly false and indisputably published, in this district, nationally and internationally.

### A. _Defendants Falsely Imputed that Plaintiff Committed a Criminal Offense Amounting to a Felony_

Defendants, jointly and severally, represented that Plaintiff had been convicted of a criminal act by stating in the September 28, 2012 article that "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused his own Children." The article contained the additional statement that, **"[t]urns out, gays aren't the only ones capable of disturbing, criminal sexual behavior-apparently even conservative straight guys tight with Bradlee Dean turn out to be total creeps."** SAC ¶11 (Emphasis added). By stating that Klayman was had committed a criminal act of sexual abusing his children, this standard is easily met.

### B. _Defendants Statements Imputed Conduct Incompatible With The Proper Exercise Of Plaintiff's Lawful Business, Trade, and Profession_

Defendants Hendley, Phoenix New Times, and by and through Defendant Voice Media Group stated in their June 18, 2013 article "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for **taking money from a client, and never doing any work**." SAC ¶¶ 14,15 (Emphasis added). Defendants stated in the article that Plaintiff took money from a client without doing any work, disparaging and defaming Plaintiff's law practice, his trade and profession and accusing him of stealing money from a client. Since this statement affects Plaintiff in his trade and profession, this statement amounts to

a per se defamatory statement as well. Because the statements were per se defamatory, malice and the occurrence of damage are both presumed from the nature of the defamation, as stated in *Wolfson*, supra.

### C. *Defendants Defamatory Statements Were Published*

In the law of defamation, publication only requires that the false statement be transmitted to a single other person other than the person defamed. See *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001) citing Restatement (Second) of Tort § 577.  Here, Defendants published the defamatory statements on the internet websites of Defendant Voice Media Group and its Defendant subsidiary publications and websites where it reaches "more than seven million monthly readers in print and 16 million unique desktop visitors each month, in addition to 1.2 million e-mail subscribers, more than 5.7 million visits on mobile, and more than forty signature food, music and arts events per year nationwide." SAC ¶9. In addition the defamatory statements were republished internationally and worldwide all over the internet by other publications as well. SAC ¶10. Thus, it is indisputable that the "publication" requirement has been satisfied.

### D. *Defendants Statements Were False.*

Defendants have thus made two defamatory statements: (1) that Plaintiff committed criminal acts of sexually abusing his children and (2) that Plaintiff took money from a client without doing any work and was reprimanded by The Florida Bar for doing so.  As set forth in the complaint, both of these statements are clearly false.

Plaintiff was never convicted, or even charged with any crime for sexually abusing his children.  As set forth in the Complaint, "Plaintiff Klayman was cleared of these false charges leveled his ex-wife by the Cleveland Department of Children and Families, the Cuyahoga County Sheriff's Department and the District Attorney, all of whom dismissed the ex-spouse's

complaint. SAC ¶12.  In addition, Plaintiff Klayman voluntarily took and passed a polygraph examination which provided further proof that he did not sexually abuse, much less inappropriately touch, his children, while tellingly his ex-spouse refused to submit to a polygraph over her false charges. *Id.* Not having any factual basis, the Defendants simply ignored the truth and instead posted the false allegations simply to harm the Plaintiff.

The same is true with The Florida Bar reprimand.  As set forth above, as well as in the Second Amended Complaint, it was made clear in the public reprimand, which was at Defendants disposal, that Plaintiff had entered into a settlement agreement with a former client wherein Plaintiff agreed to pay $5,000 out of a $25,000 non-refundable retainer, believing at the time that he could pay the amount to the former client. Klayman Aff. ¶4. In fact, Plaintiff had made ongoing installment payments to the former client, and there was not much left that remained to be paid. However, the bar filed a complaint after Plaintiff did not timely respond to its correspondence, because the bar's correspondence did not reach Plaintiff due to changes of address, which subsequently caused much confusion. Klayman Aff. ¶5.

Notwithstanding this, Plaintiff had every intention to pay the agreed upon amount to the client. However, a severe recession hit the economy and Plaintiff had personal issues, which prevented timely payment. Klayman Aff. ¶5. Conveniently ignored by the Defendants is the fact that the reprimand did not result from dishonesty or any other egregious ethical violation; rather it was just a matter of not having the money to timely pay the settlement. Indeed, the public reprimand, which Defendants had at their disposal, clearly states the many mitigating circumstances with regard to the Florida matter including: absence of prior disciplinary record, personal or emotional problems, character or reputation, and remorse. *Id.*

Defendants Hendley and Phoenix New Times, having at their disposal the public reprimand that they referenced in the article, were fully aware that Plaintiff had done substantial work for his former client and that this did form the basis of The Florida Bar reprimand. SAC ¶16.  With the complete public reprimand available to them, the Defendants instead chose to falsely accuse Plaintiff of never doing any work for the client and instead accused Plaintiff of "stealing" money from the former client, which is completely false and without any merit. This statements and accusations are false as evidenced on the face of the public reprimand that the Defendants themselves reference.

## III.     DEFENDANTS' STATEMENTS AMOUNTED TO DEFAMATION BY IMPLICATION

Florida common recognizes a claim of defamation by implication. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id*. citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988).

In addition to the clear and distinct defamation per se, the Defendants are also liable for defamation by implication.  Here, the Defendants simply chose to pick and choose facts while omitting the facts that would demonstrate that Plaintiff had neither abused his children nor stolen money from a client. Undoubtedly, evidence regarding the truth of whether Plaintiff committed and/or was convicted of the accused crime, is readily available and accessible to the public, and particularly for Defendants, who purport to be "journalists."  SAC ¶16.  However, Defendants ignored readily available public documents evidencing the falsity of Defendants' accusations and

instead, willfully falsified facts, and omitted significant details in their publications in order to intentionally discredit Plaintiff and severely harm his reputation. SAC ¶21.

Conveniently, Defendants conspicuously omitted any reference to the fact that Plaintiff was cleared of these false charges by the Cleveland Department of Children and Families, the Cayahoga County Sheriff's Department, and the District Attorney, all of whom dismissed these false and unsubstantiated allegations made by Plaintiff's ex-wife during a highly contested custody proceeding. Specifically, the matter had been thoroughly investigated by the Cleveland Department of Families and the Cuyahoga County Sheriff and District Attorney, all of whom came to identical findings and conclusions, among other material misstatements, falsehoods and omission of facts. SAC ¶12. Further, Plaintiff voluntarily took and passed a polygraph test, evidencing that Plaintiff did not sexually abuse his own children, which was also omitted from Defendants' publications. *Id.* Further, Defendants omitted to state that the referenced finding of the Cleveland magistrate and judge never found that Plaintiff had sexually abused his children, remained subject to court challenge, that the magistrate who made the initial finding was biased and prejudiced against Plaintiff Klayman for his political and religious beliefs. SAC ¶21. Other omissions include but are not limited to the magistrate having made a myriad of biased and prejudiced remarks about Plaintiff Klayman and, as set forth above, that Plaintiff Klayman had taken a polygraph which confirmed that he did not sexually abuse and/or inappropriately touch his children's private parts.

The same was true when the Defendants Hendley and the Phoenix New Times published the June 18, 2013 article that cherry picked and extracted "convenient" portions of The Florida Bar public reprimand. The Defendants simply stated that Plaintiff was "publicly reprimanded by the Florida Bar in 2011 for **taking money from a client, and never doing any work**." SAC

¶15(Emphasis added).  The Defendants chose to ignore the actual findings of The Florida Bar's public reprimand.  Plaintiff had performed substantial work for the client, as was evidenced in the reprimand itself.  Indeed, as made clear in the public reprimand, Plaintiff agreed to pay $5,000 out of a $25,000 non-refundable retainer, at the urging of a Florida Bar mediator to amicably resolve this matter, only to get the matter behind him, thinking at the time that he could pay it. Klayman Aff. ¶4.  Plaintiff had made installment payments and did not have much left that remained to be paid, when the bar filed a complaint after its correspondence that could have averted the complaint did not reach him due to changes of address and the confusion this caused, and thus the complaint was filed after Plaintiff did not timely respond. Klayman Aff. ¶5. Additionally, Defendants once again omit crucial details to convey a false impression by excluding mitigating circumstances that were stated in the public reprimand that Defendants had at their disposal including the absence of prior disciplinary record, personal or emotional problems, character or reputation, and remorse. *Id.*

**IV.   NONE OF DEFENDANTS DEFAMATORY REMARKS ARE PROTECTED BY PRIVILEGE**

   **A.   Defendants' Defamatory Comments Are Not Protected By The Substantial Truth Doctrine.**

   Under the substantial truth doctrine, which does not apply here, a statement does not have to be perfectly accurate if the "gist" or the "sting" of the statement is true. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. Dist. Ct. App. 3d Dist. 1999) citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 115 L. Ed. 2d 447, 111 S. Ct. 2419 (1991); see also *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *Nelson v. Associated Press, Inc.,* 667 F. Supp. 1468, 1477 (S.D. Fla. 1987); *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501,

503 (Fla. 3d DCA 1993); *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962).

However, a statement is considered false if it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Smith*, 731 So. 2d at 706 citing *Masson*, 501 U.S. at 517. see also *Woodard*, 616 So. 2d at 503; Early, 354 So. 2d at 352; *Bishop v. Wometco Enters., Inc.*, 235 So. 2d 759 (Fla. 3d DCA 1970); *Hill v. Lakeland Ledger Publ'g Corp.*, 231 So. 2d 254, 256 (Fla. 2d DCA 1970); *Hammond v. Times Publ'g Co*., 162 So. 2d 681, 682 (Fla. 2d DCA 1964); McCormick, 139 So. 2d at 200. The U.S. Supreme Court further recognized that a statement is not false unless it "'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson*, 501 U.S. at 517, (quoting R. Sack, Libel, Slander & Related Problems 138 (1980)).

It is evident that Defendants' articles regarding Plaintiff conveyed a different effect on the mind of its readings from which the pleaded truth would have produced. Specifically, in Defendants' three articles, Defendants engaged in direct, malicious per se libelous acts in an effort to defame Plaintiff through omissions of significant and material facts, which were readily available to Defendants. In regard to their false accusation that Plaintiff committed and/or was convicted of the crime of sexually abused abusing own children, Defendants intentionally and knowingly omitted material facts demonstrating the falsity of the accusation and evidencing the fact that Plaintiff has never been found to have sexually abused his children, much more committed a crime in this regard. This is only one of the many omissions that Defendants conveniently did not include in their September 28, 2012 article or their February 22, 2013 article, which falsely conveyed to readers that Plaintiff had, in fact, sexually abused his children. Significantly, if Defendants included the substantial amount of evidence demonstrating the

falsity of the allegation, including the results of Plaintiff's polygraph test as well as his children's accounts of being coached by Plaintiff's ex-wife and that they could not recall such inappropriate touching, these articles would have a profoundly different effect on the mind of the reader than the effect conveyed by Defendants' defamatory statement.

Similarly, in regard to Defendants' June 18, 2013 article, Defendants had, at their disposal, the public reprimand, which would clearly evidence that the matter involving The Florida Bar was not based on Plaintiff taking money from a client without doing any work. In fact, Plaintiff had completed substantial legal work for the client and circumstances evidenced in the public reprimand would demonstrate this in addition to demonstrating the true basis for the reprimand by The Florida Bar. Again, Defendants undoubtedly conveyed a different effect on the readers' mind than the pleaded truth by falsely implying that Plaintiff  "stole" money from a client and questioning Plaintiff's ability to practice law through Defendants' significant material omissions.  Through calculated distortion of truth, accomplished through strategic and selective omissions of material facts, Defendants defamed Plaintiff and harmed him and his reputation, both personally and professionally. Thus, despite Defendants' contention, the substantial truth doctrine is not satisfied and Defendants are accountable for their defamatory articles.

Defendants represented a published statement that Plaintiff sexually abused his children and took money from a client without doing work, thus falsely stating that Plaintiff committed crimes constituting felonies.  These statements constitute defamation *per se*. *Campbell v. Jacksonville Kennel Club, Inc*., 66 So. 2d 495.  Plaintiff has undoubtedly established the falsity of these statements, which were widely published and disseminated by the Defendants, nationally, internationally, and most significantly within this district.  Thus, all the elements of defamation are met.

In addition, the Defendants deliberately omitted facts in order to further convey their false portrayal of Plaintiff and harm him and his reputation both personally and professionally, causing defamation by implication under the standard set in *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098. Despite the Defendants' false and misleading claims, neither the privilege of fair and accurate reporting nor the substantial truth doctrine apply and even if Defendants wish to assert these defenses they are clearly not applicable here.  Defendants must now be held liable for their defamatory statements, and Plaintiff must be made whole for the damage that was caused to him.

### B. Defendants' Defamatory Comments Are Not Protected By The Doctrine Of Fair And Accurate Reporting.

The news media has been given a qualified privilege to accurately report on the information they receive from government officials. *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972 (Fla. 3d DCA), *rev. denied*, 518 So. 2d 1277 (Fla. 1987). This privilege includes the broadcast "of the contents of an official document, so long as their account is reasonably accurate and fair", *Ortega*, 510 So. 2d at 976 (quoting *Lavin v. New York News, Inc.*, 757 F.2d 1416, 1420 (3d Cir. 1985)).

"[E]ven where a qualified privilege exists, i.e. "statements of a citizen to a political authority regarding matters of public concern," that privilege carries with it the "obligation to employ means that are not improper," *Fla. Fern Growers Ass'n v. Concerned Citizens*, 616 So. 2d 562, 569 (Fla. Dist. Ct. App. 5th Dist. 1993).  "[T]he mode, manner or purpose of the communication would go to the question of abuse or forfeiture of the privilege." *Fla. Fern Growers Ass'n v. Concerned Citizens*, 616 So. 2d 562, 569 (Fla. Dist. Ct. App. 5th Dist. 1993) citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984).

Moreover, "the qualified privilege of reporting on official proceedings is limited in Florida. While the press may report upon defamatory statement made at an official proceeding, it

will nevertheless be liable if the private plaintiff shows that the press failed to take reasonable measures to insure that the report of the proceeding is accurate. Restatement (Second) of Torts § 611 (1976)" *Ortega*, 510 So. 2d at 975 citing *Walsh v. Miami Herald Publishing Co.*, 80 So. 2d 669, 671 (Fla. 1955) (en banc); *Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985).

Here, the Defendant had the correct information and failed to report it fairly and accurately. The Defendants simply picked and chose portions of the magistrate's decision that they found and omitted the portions that indicated that Plaintiff had never been convicted *or even charged* with a crime. Defendants further failed to accurately portray the facts as stated in The Florida Bar's public reprimand, simply to portray Plaintiff as having stolen money from a client without ever haven done any work. Due to the false and misleading use of the documents simply to damage Plaintiff and his personal and professional reputation, the qualified privilege of fair and accurate reporting does not apply.

Even if the privileges do apply, which they don't, "[i]f a statement is susceptible to two interpretations, one defamatory and one not, a jury should determine whether the statement is defamatory." *Jones v. American Broadcasting Cos.,* 694 F. Supp. 1542, 1551 (M.D. Fla. 1988) citing *Hallmark Builders, Inc. v. Gaylord Broadcasting*, 733 F.2d 1461, 1463 (11th Cir. 1984). **Nevertheless, saying that someone was convicted of a crime for sexually abusing their children is not open to interpretation. It is also not open to interpretation when you accuse someone of "never doing any work" and stealing from a client. These false and misleading statements are libelous, particularly when made with regard to an officer of the court who is a lawyer who is sworn to uphold the law. They are very damaging!**

## V.  **DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) SHOULD BE DENIED**

Under Federal Rule 12(b)(6), the court must deny the Defendants' motion to dismiss unless it appears to a certainty that Plaintiff would be entitled no relief under any state of facts, which could be proved to support a claim. *Banco Continental v. Curtiss National Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969); see also *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986). In considering a motion to dismiss, all allegations of material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Allman v. Phillip Morris, Inc.*, 865 F.Supp. 665, 667 (S.D. Cal. 1994), citing *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1989).

## CONCLUSION

For the foregoing compelling reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety. Defendants made statements that were defamatory, both per se and otherwise, and were also defamatory by implication.   Further, none of the privileges that they allege, which are inapplicable in any event, can shield them from the harm and great damage that they have caused to Plaintiff.  Respectfully, this case must now move forward for a jury of the parties' peers to decide.

Dated: February 6, 2014                              Respectfully Submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Florida Bar No. 246220
2775 NW 49th Ave., Suite 205-346
Ocala, FL 34483
(310) 595-0800
Email: leklayman@gmail.com

Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of February, 2014, a true and correct copy of the foregoing Opposition to Motion to Dismiss ( Case No. 5:13-cv-00143) was submitted electronically to the U.S. District Court for the Middle District of Florida and served via CM/ECF upon the following:


**Sanford Lewis Bohrer**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
305/374-8500
Fax: 305/789-7799
Email: sbohrer@hklaw.com


**Scott D. Ponce**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
305/789-7575
Email: sponce@hklaw.com


*Attorneys for Defendants*


*/s/ Larry Klayman*
Larry Klayman, Esq.