# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**LARRY KLAYMAN,**

        **Plaintiff,**

v.                                                 **Case No: 5:13-cv-143-Oc-22PRL**

**CITY PAGES, KEN WEINER, AARON RUPER, PHOENIX NEW TIMES, MATHEW HANDLEY and VOICE MEDIA GROUP,**

        **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint for failure to state a claim pursuant to *Federal Rule of Civil Procedure* 12(b)(6). (Doc. No. 40). Plaintiff Larry Klayman ("Plaintiff") responded in opposition. (Doc. No. 45). Based on the reasoning provided herein, the Court grants Defendants' motion in part and denies it in part.

## I. BACKGROUND

Plaintiff brings this defamation action against six defendants (collectively, "Defendants"). Each defendant is associated with Defendant Voice Media Group ("Voice Media"), a privately held media company. (Doc. No. 39 at ¶ 9). Voice Media owns Defendant City Pages, a Minneapolis, Minnesota publication, as well as Defendant Phoenix New Times, a publication based in Phoenix, Arizona. (*Id.* at ¶¶ 5, 6). Defendants Ken Weiner[1] and Aaron Rupar

---

[1] Plaintiff alleges that Ken Avidor is an alias for Ken Weiner and refers to him as "Defendant Avidor" in

are reporters and writers for City Pages. (*Id.* at ¶¶ 3, 4). Defendant Matthew Hendley is a reporter for the Phoenix New Times. (*Id.* at ¶ 7).

This case arises from three separate news articles reporting on different judicial proceedings in Ohio and Florida.

On September 28, 2012, City Pages published an article, written by Defendants Ken Avidor and Aaron Rupar, titled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children" (the "September 28 Article") (*See* Doc. No. 39-1 at pp. 1-2). (Doc. No. 39 at ¶ 19). The full article stated as follows:

> Bradlee Dean has long linked homosexuality and child sexual abuse. For instance, in a blog from June about Larry Brinken's child porn arrest, Dean wrote, "The news about Brinken's horrific child-pornography crimes followed the conclusion of 'Pride Week,' yet again puling [sic] off the mask of the radical homosexual agenda to expose who they are, what they are and who their target really is, showing who is truly under attack."
>
> Well this week brought some uncomfortable news for the tracksuit-wearing homophobic preacher – his notorious lawyer, the presumably straight Larry Klayman, has allegedly sexually abused his own children.
>
> A court recently ordered Klayman to pay his ex-wife $325,000 in attorney fees. Klayman appealed, but a judge tossed it out. What's interesting, however, are a couple of nuggets buried in the judge's ruling (via Ken Avidor – emphasis his):
>
>> {¶23} In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.
>>
>> {¶24} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the

---

the Second Amended Complaint. (Doc. No. 39 at ¶ 3). For the purposes of consistency, the Court does the same.

> trial court, deference to such findings and conclusions must be given by the reviewing court.
>
> {¶25} The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. **The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated."** Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify. The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him. In doing so, the magistrate found on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.
>
> {¶26} The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children. The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriff's Department about the allegations," and that he refused to answer any questions, **repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children.** "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was. The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.
>
> {¶27} After reviewing the record, **we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.**

Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps.

- 3 -

> If Dean distances himself from Klayman in light of these allegations, who will help him figure out how to reimburse Rachel Maddow and the now-defunct Minnesota Independent the nearly $25,000 in attorney's fees he owes them?

(Doc. No. 39-1 at pp. 1-2) (emphasis and alterations in original).

On February 22, 2013, the Phoenix New Times published an article, written by Defendant Matthew Hendley, titled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have 'Inappropriately Touched' Kids" (the "February 22 Article") (*See* Doc. No. 39-2). (Doc. No. 39 at ¶ 25). The February 22 Article states as follows:

> What are the chances that a lawyer who was found by a court to have "inappropriately touched" children would try to stop the recall of a county sheriff whose agency failed to properly investigate more than 400 sex crimes?
>
> This is quite the, um, *coincidence*, as we stumbled across a judgment from an Ohio appellate court, in a divorce case involving attorney Larry Klayman.
>
> As we reported yesterday, a group calling itself "Citizens to Protect Fair Election Results LLC" claims it will take action against the attempted recall of Maricopa County Sheriff Joe Arpaio.
>
> That group was registered by Surprise Tea Party "leaders" Jeff Lichter and James Wise -- the folks credited with getting Arpaio to start the "investigation" into President Obama's birth certificate -- and brought along Klayman to do the legal work.
>
> Klayman, an attorney for Freedom Watch, happens to be friendly with the conspiracy theorists at *World Net Daily*, and once introduced a "birther" affidavit from Arpaio as evidence in an actual courtroom.
>
> Thanks to our sister paper in Minneapolis, City Pages, we have an appellate court ruling from Ohio in which Klayman was unsuccessful in appealing a ruling about the terms of his parental rights stemming from his divorce, and a ruling that found him in contempt of court.
>
> Part of that appeal was Klayman asking the court to review "the trial court's finding that [Klayman] engaged in inappropriate touching of his child is contrary to the manifest weight of the evidence and an abuse of discretion."
>
> Read the excerpts from the appellate court's ruling below:
>
> [The article quotes paragraphs twenty-five through twenty-seven of the opinion of

the Court of Appeals of Ohio, repeated above in the September 28 Article. The February 22 Article did not emphasize any portion of the Court of Appeals opinion.]

Obviously, we're talking about civil court matters here, not criminal court or criminal charges.

However, a magistrate judge weighed the evidence and found that Klayman acted "in a grossly inappropriate manner with the children."

Klayman's challenge to the attempted recall of Arpaio probably won't turn out in his favor, either.

(Doc. No. 39-2 at pp. 1-2) (emphasis and alterations in original).

On June 18, 2013, and after this action originally commenced, the Phoenix New Times published the final article in question: "Larry Klayman Under Investigation by Arizona Bar" (the "June 18 Article") (Doc. No. 39-3). (Doc. No. 39 at ¶¶ 32-33). Defendant Michael Hendley wrote the June 18 Article. (*Id.*). In material part, the June 18 Article reads:[2]

Notorious "birther" attorney Larry Klayman is being investigated by the State Bar.

Although Arizona State Bar spokesman Rick DeBruhl confirms to *New Times* that the investigation exists, he says there are no public documents associated with the case at this time.

The investigation seems to stem from Klayman's lawsuit to stop the effort to recall Sheriff Joe Arpaio, although we don't know exactly what the scope of the investigation is.

Sources say that the investigation may be related to Klayman's application to appear *pro hac vice*, which allowed him to work on the case without being licensed to practice law in Arizona.

Klayman's application was approved by Maricopa County Judge Michael Herrod, the husband of right-wing powerhouse lobbyist Cathi Herrod. Judge Herrod eventually recused himself from the case, as Herrod used to be a partner at the law firm that has represented Arpaio in several matters, including the current racial-profiling case, *Melendres v. Arpaio*.

---

2 The Court omitted a paragraph from the article which mentions an alleged derogatory e-mail Plaintiff sent to the chairman of the Arpaio recall organization. This email does not appear relevant and the parties do not address it as an issue pertinent to this case.

> . . . .
>
> However, Klayman's involvement in this case is somehow not as bizarre as some of his other antics.
>
> Klayman, the founder of Judicial Watch, has sued an incredible amount of people, ranging from the Clinton administration to his own mother, and has also filed a lawsuit against *New Times*, claiming "defamation."
>
> A *New Times* report earlier this year cited an appellate court ruling from Ohio, a public record, affirming a magistrate judge's finding that Klayman "inappropriately touched" his own children.
>
> That lawsuit apparently hasn't satisfied Klayman, who just yesterday announced that he's suing that magistrate judge who made the finding. Klayman thinks the judge -- "who is a liberal Democrat and a Jew," according to Klayman's press release on the matter – made the ruling just to "destroy him in the media."
>
> As for the current Bar investigation, we'll keep you updated as the details come out. Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work.

(Doc. No. 39-3 at pp. 1-2).

The Second Amended Complaint alleges six Counts under Florida law. Count I is a defamation claim against Defendants Avidor, Rupar, City Pages, and Voice Media Group arising from the September 28 Article (Doc. No. 39 at ¶¶ 18-23); Count II is a defamation claim against Defendants Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Article (*id.* at ¶¶ 24-30); Count III is a defamation claim against Defendants Avidor, Rupar, City Pages, and Voice Media Group arising from the June 18 Article (*id.* at ¶¶ 31-40); Count IV is a defamation by implication claim against Defendants Avidor, Rupar, City Pages, and Voice Media Group arising from the September 28 Article (*id.* at ¶¶ 41-44);  Count V is a defamation by implication claim against Defendants Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Article (*id.* at ¶¶ 45-50); Count VI is a defamation by implication

claim against Defendants Hendley, Phoenix New Times, and Voice Media Group arising from the June 18 Article. (*Id.* at ¶¶ 51-56).

## II. LEGAL STANDARD

When deciding a motion to dismiss based on a failure to state a claim upon which relief can be granted, the court must accept as true the factual allegations in the complaint and draw all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam) (citation omitted).

According to *Federal Rule of Civil Procedure* 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

## III.   ANALYSIS

A. Preliminary Issues

In the present motion, Defendants move to dismiss the following in the Second Amended Complaint: Counts I and II because the statements contained therein are true; Counts I, II, and III, because the underlying statements are substantially true; Counts I and II because the statements are fair and accurate reports of official documents; Counts IV, V, and VI because

Plaintiff alleges the statements contained therein are false; Counts IV and V because Plaintiff cannot rely on an omission theory of defamation by implication; Counts IV, V, and VI because the statements are substantially true, and Counts IV and V because the statements are fair and accurate reports of official documents. However, most of Defendants' arguments as to truth, substantial truth, and fair and accurate reporting of the various articles at issue are premised on documents not attached to Plaintiff's Second Amended Complaint. These documents, attached to Defendants' Motion to Dismiss, include several of the judicial filings, opinions, and orders related to the proceedings in Ohio and Florida. (*See* Doc. Nos. 40-1 through 40-7).

In decisions applying Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, the Eleventh Circuit has "adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). *Horsley* explains that "'undisputed' in this context means that the authenticity of the document is not challenged." *Id.*

Plaintiff does not appear to challenge the authenticity of any of these supplemental documents. However, while the Court may consider these documents, it is not required to. *See Horsley*, 304 F.3d at 1134 (stating "a document attached to a motion to dismiss *may* be considered by the court" (emphasis added)); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (stating that a Court "may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). At this stage in the case, the Court takes note of the existence of these documents. However, the Court finds that under the circumstances presented, anything more would essentially convert the instant motion into a motion for summary judgment, which would

be inappropriate given the lack development in the record as to other issues and what the Court considers to be insufficient briefing on the issues presented at this stage. Thus, the Court limits its review on this Rule 12(b)(6) motion to dismiss to the Second Amended Complaint and its attachments.

   B. <u>Counts I, II, and III – Defamation Claims</u>

"The elements of a claim for defamation are as follows: '(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.'" *Internet Solutions Corp. v. Marshall,* 39 So. 3d 1201, 1214 n.6 (Fla. 2010) (quoting *Jews for Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008)).

In regards to Count I, Defendants appear to attack the sufficiency of the complaint only as to falsity.[3] However, on the face of the Second Amended Complaint, Plaintiff alleges that the "defamatory statements of the September 28, 2012 article falsely state that Plaintiff committed and was convicted of the crime of child sexual abuse." (Doc. No. 39 at ¶ 19). Specifically, Plaintiff refers to the statement: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps." (*Id.*). At this stage, the Court accepts as true the factual allegations in the complaint, and draws all inferences derived from those facts in the light most favorable to the plaintiff. Taken in context with the article as a whole, and with all inferences resolved in the light most favorable to Plaintiff, the Court finds that Count I adequately pleads that the statement is false.

---

3 For this reason, the Court will assume Plaintiff has established the other elements that Defendants do not challenge.

Similarly, as to Count II, Plaintiff alleges that "the defamatory statements once again misleadingly and falsely stated that Plaintiff 'inappropriately touched' children, despite the lack of any evidence that Plaintiff had committed these acts and negligently, willfully, and/or maliciously stated: 'Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps.'" (*Id.* at ¶ 25). Plaintiff further alleges that the February 22 Article "linked and reincorporated" the September 28 Article, "which falsely stated that Plaintiff committed and was convicted of the crime of child sexual abuse and thus Defendants have also again defamed Plaintiff Klayman through this republication . . . ." (*Id.* at ¶ 26). Thus, regardless of Defendants' arguments as to the truth of the statements contained in the February 22 Article, Count II must continue at this stage because Plaintiff alleges that linking to the September 28 Article constituted republication[4] of the defamatory statements in the September 28 Article.

As to Count III and the June 18 Article, Plaintiff alleges that the statement – "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" – is false. (*Id.* at ¶¶ 33, 36). Plaintiff alleges that this statement defamed "Plaintiff and his profession by stating that he took money from a client and never did any work for her, in effect stealing money from a client." (*Id.* at ¶ 37). Plaintiff further alleges that the June 18 Article "linked and reincorporated" the September 28 Article, "which falsely stated that Plaintiff committed and was convicted of the crime of child sexual abuse and thus Defendants have also again defamed Plaintiff Klayman through this republication . . . ." (*Id.* at ¶¶ 34, 35).

---

4 As one example of why the Court declines to convert this motion into a motion for summary judgment, there may be an issue in this case as to whether or not "hyperlinking" to a previous allegedly libelous article constitutes republication. This issue was not addressed by the parties at the motion to dismiss stage.

Defendants' arguments may more appropriately be addressed at the summary judgment stage with the benefit of a fully developed record and more complete briefing. *See, e.g., LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.,* 842 So. 2d 881, 887 (Fla. 4th DCA 2003) ("Under Florida law, truth 'is only a defense to defamation when the truth has been coupled with good motive.'") (quoting *Lipsig v. Ramlawi,* 760 So. 2d 170, 183 (Fla. 3d DCA 2000)). At this stage, on a Rule 12(b)(6) motion to dismiss, the Court declines to address the parties' numerous attachments outside of the pleadings.[5]

C. Counts IV, V, and VI – Defamation By Implication Claims

Plaintiff has also asserted claims for "defamation by implication," which is a tort recognized under Florida law. *See Rapp,* 997 So. 2d at 1108. "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id.* at 1106 (citing *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)).[6] "All of the protections of defamation law that are afforded to the media and private defendants are [] extended to the tort of defamation by implication." *Id.* at 1108 (alteration added; citation and footnote omitted).

Defendants' arguments as to Plaintiff's failure to state a claim under the first variety of defamation by implication are well-taken. (Doc. No. 40 at p. 19). As stated by the Florida Supreme Court, "if the defendant juxtaposes a series of facts so as to imply a defamatory

---

5 As mentioned above, Defendants attached six different exhibits to its Motion to Dismiss. (*See* Doc. Nos. 40-1 through 40-7). However, this is not the only evidence presented outside of the Second Amended Complaint; Plaintiff also attaches evidence in support of his response in opposition to defendants' motion to dismiss, including an affidavit, a letter from the Cuyahoga County Prosecutor and Children and Family Services, a polygraph report, and the public reprimand from the Supreme Court of Florida. (*See* Doc. Nos. 45-1 through 45-3).

6 *See also Rapp*, 997 So. 2d at 1106 (citing *Stevens v. Iowa Newspapers, Inc.*, 728 N.W. 2d 823, 827 (Iowa 2007) ("Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication . . . .") (internal quotations omitted) (alterations in original)).

connection between them . . . he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Rapp*, 997 So. 2d at 1108. Thus, under this theory, Plaintiff must allege that the underlying statements are true. Here, Plaintiff alleges that the underlying statements from each of the articles is false. (*See* Doc. No. 39 at ¶¶ 42 (September 28 statement is false); 46 (February 22 statement is false); and 52 (June 18 Statement is false)). Thus, under this theory of defamation by implication, Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

As to Counts IV and V, however, Plaintiff does allege that Defendants created defamatory implications in their articles by the omission of facts, the second type of defamation by implication described by the Supreme Court of Florida, which at this stage the Court finds is sufficient to state a claim. (*Id.* at ¶¶ 42-43, 46-49).

As to Count VI, Plaintiff only alleges that "Defendants Hendley and Phoenix New Times, by and through Defendant Voice Media Group, published a material misstatement, falsehood, and omission of fact [in the June 18 Article] . . . when they stated that Plaintiff had a bar complaint against him for taking a client's money and "**never doing any work**." (*Id.* at ¶ 52) (emphasis in original). Unlike the other Counts, Plaintiff provides no factual allegations in Count VI as to any omitted facts relating to the June 18 Article which created a defamatory implication. (*See* Doc. No. 39 at ¶¶ 51-56). In his response to Defendants' motion to dismiss Count VI, Plaintiff argues *inter alia* that Defendants "omit crucial details to convey a false impression by excluding mitigating circumstances that were stated in the public reprimand that Defendants had at their disposal including the absence of prior disciplinary record, personal or emotional problems, character or reputation, and remorse." (Doc. No. 45 at p. 15). However, Plaintiff does not cite to allegations in the Second Amended Complaint to support this argument; instead,

Plaintiff cites to an affidavit he filed in support of his response. (*See* Doc. No. 45-4). This affidavit is the kind of material outside the pleadings that the Court is not going to consider in ruling on this Rule 12(b)(6) motion. However, the Court will allow Plaintiff an opportunity to remedy this pleading deficiency if he can do so consistent with *Federal Rule of Civil Procedure 11*.

Defendants' remaining arguments on these claims will more appropriately be addressed at summary judgment. *See*, *e.g., Rapp,* 997 So.2d at 1108 n.13 (Fla. 2008) (holding that "truth remains an available defense to defendants who can prove that the defamatory implication is true" in a defamation by implication action).

## IV. CONCLUSION

Upon reviewing the present motion, its arguments, and the case law cited therein, the Court finds that the detailed parsing of the specifics of the case is inappropriate at this stage of the proceedings. Most of Defendants' arguments are more appropriately addressed at summary judgment, with the benefit of a fully developed record and more complete briefing. Of course, the Court expresses no opinion as to Plaintiff's ability to prove his claims; only that, at this preliminary stage of assessing the legal sufficiency of the elements that Defendants challenge, Plaintiff has adequately stated plausible claims as to Counts I through V. The Court will permit Plaintiff a final opportunity to remedy the pleading deficiencies identified as to Count VI.

Based on the foregoing, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 40), filed on December 20, 2014, is **GRANTED in part and DENIED in part.**

    a. Defendants' motion to dismiss is **DENIED** as to Counts I through V.

   b. Defendants' motion to dismiss is **GRANTED** as to Plaintiff's Count VI. This claim is **DISMISSED without prejudice and with leave to amend.**

2. Plaintiff is **GRANTED** leave to file an amended complaint on or before July 23, 2012. The amended complaint shall not serve as an opportunity to add new claims or parties. Rather, this represents a chance for Plaintiff to remedy the pleading deficiencies identified herein. Failure to file an amended complaint by this date may result in dismissal of this case without further notice.

 **DONE** and **ORDERED** in Orlando, Florida on July 9, 2014.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties