UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 5:13-00143-ACC-PRL

LARRY KLAYMAN,

       Plaintiff,

vs.

VOICE MEDIA GROUP,
CITY PAGES,
PHOENIX NEW TIMES,
AARON RUPAR,
MATTHEW HENDLEY,
and KEN AVIDOR,

       Defendants.

_____/


**DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**


HOLLAND & KNIGHT LLP
Sanford L. Bohrer (FBN 160643)
Scott D. Ponce (FBN 0169528)
Attorneys for Defendants
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

Defendants, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, move for the entry of summary judgment in their favor, and against Plaintiff, on each count of the Third Amended Complaint ("3AC") [ECF No. 52]. The grounds for this Motion are:

## I.   MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE.

Plaintiff has stipulated that he is a "public figure" for the purposes of the First Amendment (Deposition of Larry Klayman (Exhibit 1), p.114, l.14 – p.115, l.4). [1]

During the course of child custody and support proceedings in Ohio between Plaintiff and his former spouse, the presiding magistrate judge entered an Order detailing, among other things, allegations that Plaintiff inappropriately touched his son's genitals; allegations that Plaintiff had his daughter wash his genitals; allegations that Plaintiff kissed his son "all over" while the boy was in the bathtub and that Plaintiff "played with [the boy's] privates;" the children's pediatrician contacted a child welfare agency to report allegations of sexual abuse; allegations that one of Plaintiff's female friends took Plaintiff's nine year old daughter to a lingerie store and purchased thong underwear for the daughter, which Plaintiff encouraged his daughter to wear; Plaintiff's complete lack of credibility; and state and federal judges' findings that Plaintiff has acted with complete disregard for the judicial process (Exhibit 2, pp. 13-15, 21-24, 77-78, 85-87). [2]

The magistrate judge addressed Plaintiff's arguments that, among other things, he passed a polygraph examination, that a social worker's determination that sexual abuse was "indicated" was subsequently changed to "unsubstantiated," and that the district attorney did not present a case to the grand jury; and the magistrate judge explained why he was not persuaded by those arguments

---

[1] The exhibits referred to in this Motion are attached to Defendants' Notice of Filing, which was filed contemporaneously with this Motion.

[2] This order, and the other orders entered by Ohio courts that are cited in this Motion, have been certified by the respective clerks' offices as true and correct copies of the originals of the documents that were filed in and are kept by the clerks' offices. *See, e.g.,* Fed.R.Evid. 901(7) and 902(1)(A) & (4).

(*Id.*, pp. 17-21).   The magistrate judge found, among other things, that Plaintiff's former spouse did not fabricate the allegation that Plaintiff touched his son's genitals and that the boy "uttered the words" on his own (*Id.*, p. 89).

The trial judge rejected Plaintiff's objections to the magistrate judge's order, and adopted the order without modification (Exhibit 3).   The appellate court affirmed, writing: "the magistrate judge heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker who found that sexual abuse was 'indicated,'" and Plaintiff "refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children.  'Even more disturbing' to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was," and "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Exhibit 4, ¶¶25-27).   The appellate court also rejected Plaintiff's argument that the magistrate's order should be set aside because the magistrate was biased against Plaintiff (*Id.*, ¶¶18-22).   The Ohio Supreme Court declined to accept jurisdiction over Plaintiff's attempt to further appeal (Exhibit 5).

Plaintiff was the subject of disciplinary proceedings by the Florida Bar.   According to the Report of Referee, a former client filed a grievance with the Florida Bar "alleging that [Plaintiff] had had (sic) failed to provide services in her criminal case after she paid him a $25,000 retainer" (Exhibit 6, p. 2).   Plaintiff and the former client entered The Florida Bar Grievance Mediation Program, and Plaintiff agreed to pay her $5,000 (*Id.*, pp. 2-3).   Plaintiff violated the agreement by failing to make full payment, which resulted in the opening of additional disciplinary proceedings relating to Plaintiff's violation of the settlement agreement (*Id.*, pp. 3-6).   After the Florida Bar made a probable cause determination and filed a formal complaint with the Florida Supreme Court,

2

Plaintiff paid the balance owed under the settlement agreement (*Id.*, pp. 5-6).   The referee thereafter recommended that Plaintiff be found guilty of various ethics violations, and accepted Plaintiff's "Unconditional Guilty Plea and Consent Judgment for Discipline" (*Id.*, pp. 6-7).   The Florida Supreme Court approved the "uncontested referee's report" and reprimanded Plaintiff for ethics violations (Exhibit 7).

On September 28, 2012, a post entitled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children," written by Defendant Aaron Rupar, was published on the Internet website of the *City Pages* newspaper (the "September 28 Article") (ECF No. 52-1; Deposition of Aaron Rupar (Exhibit 8), p.58, l.17 – p.59, l.16, p.60, l.15 – p.61, l.2).   The September 28 Article quotes the entirety of the portion of the Ohio appellate court's opinion relating to touching, including the court's statement: "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (ECF No. 52-1).

The September 28 Article includes the following statement:   "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (*Id.*).   Defendant Rupar relied upon his review and understanding of the Ohio appellate court's opinion in writing the September 28 Article and that statement (Rupar Depo., p.61, l.25 – p.62, l.16).   Rupar used the word criminal because he understood the conduct described in the appellate court's opinion to be "criminal" behavior (Rupar Depo., p.74, l.20 – p.76, l.20; p.78, l.4 – p.82, l.5).[3]   Rupar believed that statement was true at the time he wrote and published it (Declaration of Aaron Rupar (Exhibit 9), ¶6).

---

[3] Although Defendants have moved to exclude the testimony of Plaintiff's putative expert witness, it is worth noting that the expert testified that a court finding that someone "inappropriately touched" a minor child sounds like child abuse (Deposition of Thomas Madden (Exhibit 10), p.75, l.22 – p.76, l.14; p.99, l.24 – p.101, l.2).

On February 22, 2013, a post entitled "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids," written by Defendant Matthew Hendley, was published on the Internet website of the *Phoenix New Times* newspaper (the "February 22 Article") (ECF No. 52-2, Deposition of Matthew Hendley (Exhibit 11), p.98, l.22 – p.99, l.9, p.104, ll.2-9). The February 22 Article quotes at length from the Ohio appellate court's opinion, including its statement that, "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (ECF No. 52-2; Hendley Depo., p.104, l.2 – p.105, l.17 ). At the time Defendant Hendley wrote and published the statement that a court found that Plaintiff inappropriately touched his children, he believed the statement was true because that is what the appellate court wrote (Hendley Depo., p.104, l.2 – p.105, l.17; Declaration of Matthew Hendley (Exhibit 12), ¶¶2-6).

On June 18, 2013, a post entitled "Larry Klayman Under Investigation By The Arizona Bar," written by Defendant Hendley, was published on the Internet website of the *Phoenix New Times* website (the "June 18 Article") (ECF No. 52-3; Hendley Depo., p.71, l.15 – p.72, l.5).  The article reports that "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" (ECF No. 52-3).  In writing that portion of the June 18 Article, Defendant Hendley reviewed an article that was published in November 2011 in the *Miami New Times* newspaper, which reported the Florida Bar proceedings and said:  "The Florida Bar has issued a public reprimand of Klayman for taking a $25,000 payment to represent a woman in a high-profile criminal case and then allegedly failing to, y'know, do any lawyerin'." (Hendley Depo., p.72, ll.6-23, p.75, l.2 – p.76, l.1, p.114, l.11 – p.115, l.17; Exhibit 13).  He also reviewed the filings in the Florida Bar proceedings, which were accessible through a link in the *Miami New Times* article (Hendley Depo., p.72, l.6 –

p.73, l.7, p.75, l.2 – p.76, l.1, p.83, l.3 – p.84, l.6).  Those Florida Bar filings were the Formal

Complaint, Consent Judgment, Report of Referee, and Supreme Court Order (Exhibits 14-15, 6-

7).  Defendant Hendley included in the June 18 Article a link to the *Miami New Times* article

(Hendley Decl., ¶10).

The statement in the June 18 article – "Klayman's been in trouble with a Bar association

before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client,

and never doing any work" – was a summary of what Mr. Hendley drew from the Florida Bar

documents and *Miami New Times* article (the latter of which was read by Plaintiff around the time

it was published without complaint from Plaintiff);[4] he did not intentionally mischaracterize the

Florida Bar documents, and he believed the statement was true at the time he wrote and published

it (Hendley Depo., p. 78, l.15 – p.79, l.7, p.110, ll.1-22; Hendley Decl., ¶¶7-12).

Defendant Avidor did not write or publish the September 28, February 22, or June 18

Articles (Deposition of Kenneth S. Avidor (Exhibit 16), p.73, l.20 - p.75, l.6; Declaration of

Kenneth Avidor (Exhibit 17), ¶¶2-3; Rupar Depo., p.58, l.17 – p.59, l.16, p.60, l.15 – p.61, l.2).

Defendant Voice Media Group does not publish any newspapers (Declaration of Andrew

Van De Voorde (Exhibit 18), ¶3)

On November 26, 2013, Plaintiff sent Defendant notice, pursuant to §770.01, Florida

Statutes, specifying the statements that he alleged to be false and defamatory (the "770 Notice")

[ECF No. 54-4].  Section 770.01 provides that "[b]efore any civil action is brought for publication

. . . in a newspaper . . . of a libel  . . . the plaintiff shall . . . serve notice in writing on the defendant,

*specifying* the article or broadcast and *the statements therein which he or she alleges to be false*

*and defamatory*" (emphasis added).

---

[4] Deposition of Larry Klayman (Exhibit 1), p.89, l.24 – p.91, l.20.

With respect to the September 28 Article, the 770 Notice identified only the following statement: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (the "September 28 Statement").

With respect to the February 22 article, the Notice says "the defamatory statements once again falsely infer that I 'inappropriately touched' children . . . ." It is unclear whether that statement is a reference to the title of the article, "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids;" or the first sentence of the article: "What are the chances that a lawyer who was found by a court to have 'inappropriately touched' his children would try to stop the recall of a county sheriff whose agency failed to properly investigate more than 400 sex crimes?" (ECF No. 52-2) Regardless, those statements will be referred to, collectively, as the "February 22 Statement."

With respect to the June 18 Article, the 770 Notice says "the defamatory statements represent and/or give the false impression that I was reprimanded "for taking money from a client, and never doing any work." That is a reference to the following statement from the June 18 Article: "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" (the "June 18 Statement") (ECF No. 52-3).

## II.      THE THIRD AMENDED COMPLAINT

The Third Amended Complaint contains six counts. Count I purports to state a claim for defamation against Avidor, Rupar, City Pages, and Voice Media Group arising from the September 28 Statement. Count II purports to state a claim for defamation against Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Statement. Count III purports to

6

state a claim for defamation arising from the June 18 Statement and, despite its title, is against

Hendley, Phoenix New Times, and Voice Media Group.[5]

Count IV purports to state a claim for defamation by implication against Avidor, Rupar,

City Pages, and Voice Media Group arising from the September 28 Statement.  Count V purports

to state a claim for defamation by implication against Hendley, Phoenix New Times, and Voice

Media Group arising from the February 22 Statement.  Count VI purports to state a claim for

defamation by implication against Hendley, Phoenix New Times, and Voice Media Group arising

from the June 18 Statement.  *The Court previously ruled that Counts IV through VI are limited to

the theory that a defamatory implication was created by the alleged omission of facts.*  *See* ECF

No. 50, pp. 11-12.

## III.    ARGUMENT

### A.    Summary Judgment Should Be Entered In Favor Of Voice Media Group.

Each count purports to state a claim against Voice Media Group arising from statements

that were published in the *City Pages* or *Phoenix New Times* newspapers.  However, Voice Media

Group does not publish any newspapers, including those two (Van De Voorde Decl., ¶¶3-4).  Those

two newspapers are published by limited liability companies who are not defendants in this action

(*Id.*).  Summary judgment should be entered in favor of Voice Media Group on each count.

### B.    Summary Judgment Should Be Entered In Favor Of Avidor On Counts I And IV.

Counts I and IV are for defamation and defamation by implication, respectively, against

Defendant Avidor arising from the September 28 Statement.  Avidor did not write or publish the

September 28 Article (or the February 22 and June 18 Articles) (Avidor Depo., p.73, l.20 - p.75,

---

[5] The title of Count III says the claim is against Avidor, Rupar, and City Pages, but that ostensibly is an error because none of those Defendants wrote or published the June 18 Article (ECF No. 52-3).

l.6; Avidor Decl., ¶¶2-3). That means he cannot be liable for defamation because he did not publish the September 28 Statement and, because he did not publish the September 28 Article, he did not omit facts from the article.   *See Rapp v. Jews for Jesus, Inc.*, 997 So.2d 1098, 1106 (Fla. 2008) (publication is an element of defamation, and defamation by implication requires the defendant to have "create[d] a defamatory implication by omitting facts" in a publication).  Summary judgment should be entered in favor of Defendant Avidor on Counts I and IV.

## C.   Summary Judgment Should Be Entered On All Counts Because There Is No Clear And Convincing Evidence Of Actual Malice.

Plaintiff has stipulated that he is a public figure for the purposes of the First Amendment (Klayman Depo., p.114, l.14 – p.115, l.4).  Public figures suing for defamation and defamation by implication are required to prove – by clear and convincing evidence – that the statements at issue were published with constitutional actual malice, which is a ***subjective*** standard requiring the defendant to have published the statements with actual knowledge of their falsity or with reckless disregard of the truth.  *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43 (1974); *Mile Marker, Inc. v. Petersen Publishing, LLC*, 811 So.2d 841, 845 (Fla. 4th DCA 2002); *Zorc v. Jordan*, 765 So.2d 768, 771 (Fla. 4th DCA 2000); *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 51-52 (Fla. 4th DCA 1976); *Garrison v. State of Louisiana*, 379 U.S. 64, 73 (1964) ("utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth"); *Jews for Jesus*, 997 So.2d at 1108, 1111 (the "'actual malice' standard [applicable] to suits by public figures against publishers" is one "of the protections of defamation law" that  applies to claims for defamation by implication).

"The test of actual malice . . . focuses on the defendant's state of mind *at the time of publication*."  *See Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983) (quoting *Long v. Arcell*, 618 F.2d 1145 (5th Cir. 1980)) (emphasis added); *see also New York Times Co. v. Sullivan*,

376 U.S. 254, 261-62, 286 (1964) ("The [defendant's] statement does not indicate malice at the time of publication . . . ."); *Danwala v. Houston Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993) ("The focus is on Wellborn's state of mind at the time of publication.").  Summary judgment should be entered in favor of Defendants on every count because there is no basis by which a jury could find clear and convincing evidence that, at the time the time of publication, Defendants acted with subjective knowledge of falsity or a reckless disregard for the truth.

### 1.    Applying The Actual Malice Standard At The Summary Judgment Stage.

The Supreme Court has made clear that the requirement that actual malice be proven by clear and convincing evidence applies at the summary judgment stage:

> Just as the "convincing clarity" requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment.  When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [*New York Times*, 376 U.S. at 279-80, 585-86].  For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.
>
> *    *    *
>
> Consequently, where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.  Thus, where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.
>
> *    *    *
>
> In sum, a court ruling on a motion for summary judgment must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice has been shown with convincing clarity.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 255-56, 257 (1986).

### 2.   There Is No Clear And Convincing Evidence Of Actual Malice.

Counts I and IV relate to the September 28 Statement and Article.  Counts II and V relate to the February 22 Statement and Article.  Counts III and VI relate the June 18 Statement and Article.  This section of the Motion will use those groupings in addressing why there is no clear and convincing evidence of actual malice.

### i.   Counts I and IV.

Count I, for defamation, is premised upon the September 28 Statement, which was written and published by Defendant Rupar and said:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  Plaintiff alleges the statement is false because it says he committed and was convicted of a crime (3AC, ¶26).  That is not what the statement says and, in any event, there is no clear and convincing evidence that Defendants published the statement with subjective knowledge of falsity or reckless disregared for the truth.

Rupar believed that statement was true at the time he wrote and published it (Rupar Decl., ¶6).  He testified, without contradiction, that he wrote and published the statement because he understood the conduct described in the appellate court's opinion – that Plaintiff was found to have "inappropriately touched" his children – to be "criminal" behavior (Rupar Depo., p.74, l.20 – p.76, l.20; p.78, l.4 – p.82, l.5).  Additionally, the appellate court's opinion – as quoted in the September 28 Article – said that "the magistrate judge heard evidence from the children's pediatrician who reported allegations of *sexual abuse* to children services, and from a social worker who found that *sexual abuse* was 'indicated'" (Ex. 4, ¶25; ECF No. 52-1) (emphasis added).

Further, such conduct *is* criminal in Ohio, *see* Ohio Rev. Code, §§2907.01(B) and 2907.06, and it is hard to imagine that there are any jurisdictions in which an adult inappropriately touching a child is *not* criminal behavior.  *See, e.g.,* §800.04(5), Florida Statutes.  That Plaintiff was not

charged with or convicted of a crime does not mean that he did not engage in disturbing, criminal sexual behavior.  He did engage in such behavior, and when given the opportunity to deny that he inappropriately touched his children, he invoked his Fifth Amendment rights, which means he believed testimony about the touching could *incriminate* him – all of which was stated in the appellate court's opinion and quoted in the September 28 Article (Ex. 4 ¶26; ECF No. 52-1). Summary judgment should be entered in favor of Defendants on Count I because there is no clear and convincing evidence of constitutional actual malice.

Count IV is for defamation by implication arising from the September 28 Article.  Plaintiff alleges the article creates a defamatory implication that he "inappropriately touched" his children because the article did not report that: the Ohio courts' orders remain subject to challenge (although Plaintiff does not allege how that is so in light of the fact that the Ohio Supreme Court declined to grant review (Ex. 5)), the magistrate was biased against him because of Plaintiff's religious views, Plaintiff passed a polygraph examination, and the matter was investigated by law enforcement agencies in Ohio (3AC, ¶50).  Summary judgment must be entered in favor of Defendants on Count IV because there is no clear and convincing evidence that Defendants omitted anything with subjective knowledge that the omission created a defamatory implication or that they did so with reckless disregard for the truth.

Plaintiff's position is that Defendants defamed him by implication because they did not report Plaintiff's arguments as to why he believes the Ohio courts were wrong.  The bottom line, though, is that the Ohio courts heard and considered all of those arguments and found what they found, and wrote that they wrote, and the fact that Plaintiff believes the courts were wrong is of no consequence.  As Rupar testified, he was merely reporting what was written in an opinion from an appellate court in Ohio, and to the extent Plaintiff believes the ruling was erroneous, that is an issue between him and the courts and does not change the content of the appellate court's opinion

(Rupar Depo., pp. 68, l.17 – p.70, l.7, p.82, l.9 – p.83, l.18).   Indeed, there is no evidence in the record – much less clear and convincing evidence – that Defendants were even aware of the things Plaintiff says were omitted from the September 28 Article.

Additionally, and as Rupar testified, the September 28 Article – in quoting the appellate court's opinion – *does* report Plaintiff's denials of the allegations:   "Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence" and "The issues raised by Klayman involve credibility assessments made by the magistrate.   Klayman challenges these findings" (Ex. 4, ¶¶23, 25; ECF No. 52-1; Rupar Depo., pp. 85, l.17 – p.86, l.16).   Summary judgment should be entered in favor of Defendants on Count IV.

   ii.  *Counts II and V.*

Count II, for defamation, is premised upon the February 22 Statement, which was written and published by Defendant Hendley, and said Plaintiff was found to have "inappropriately touched" his children.   There is no clear and convincing evidence that this statement was published with knowledge of its supposed falsity or with reckless disregard for the truth.   Indeed, it is impossible for such evidence to exist because, as quoted in the February 22 Article, that is exactly what the Ohio appellate court said:   "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Ex. 4, ¶27; ECF No. 52-2; Hendley Depo., p.104, l.2 – p.105, l.17; Hendley Decl., ¶¶2-6).   Summary judgment should be entered in favor of Defendants on Count II.

Count V is for defamation by implication, and is premised upon the February 22 Article.   It is substantively identical to Count IV, in that it alleges that Defendants did not report Plaintiff's arguments as to why he thinks the Ohio courts were wrong, thereby creating a defamatory

implication that Plaintiff inappropriately touched his children (3AC, ¶56).  It fails for the same reasons that Count IV fails.

More specifically, there is no clear and convincing evidence that Defendants were even aware of Plaintiff's arguments, much less that they omitted them from the February 22 Article with subjective knowledge or reckless disregard of the defamatory implication that supposedly would be created.  The Article quoted what the Ohio appellate court said about Plaintiff's challenges to the findings of inappropriate touching, the court's rejection of those challenges, and the court's conclusion: "[W]e find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Ex. 4, ¶¶18-22, 23, 25, 27; Hendley Depo., p.104, l.2 – p.105, l.17).  The uncontroverted evidence shows that Defendants published an article reporting the fact of the entry of the appellate court's opinion, and what the opinion said about Plaintiff, including the court's rejection of Plaintiff's arguments challenging the finding of inappropriate touching. That Plaintiff believes Defendant also should have published each and every argument that he thinks exonerates him is not clear and convincing evidence of constitutional actual malice.  Summary judgment should be entered in favor of defendants on Count V.

> iii.   *Counts III and VI.*

Count III, for defamation, is premised upon the June 18 Statement:  "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work."  In writing and publishing this statement, Defendant Hendley reviewed a prior article that was published in November 2011 in the *Miami New Times* newspaper that reported the Florida Bar proceedings and said: "The Florida Bar has issued a public reprimand of Klayman for taking a $25,000 payment to represent a woman in a high-profile criminal case and then allegedly failing to, y'know, do any lawyerin'." (Hendley

13

Depo., p.72, ll.6-23, p.75, l.2 – p.76, l.1, p.114, l.11 – p.115, l.17; Ex. 13).  Plaintiff read the *Miami New Times* article around the time it was published and, despite his litigious nature, did not complain about that statement (Klayman Depo., pp.89-91).  Hendley also reviewed the filings in the Florida Bar proceedings, which were linked in the *Miami New Times* article (Hendley Depo., p.72, l.6 – p.73, l.7, p.75, l.2 – p.76, l.1, p.83, l.3 – p.84, l.6).

Hendley testified – without contradiction – that the June 18 Statement was his summary of what he drew from the Florida Bar documents and *Miami New Times* article, that he did not intentionally mischaracterize the Florida Bar documents, and that he believed the statement was true at the time he wrote and published it (Hendley Depo., p. 78, l.15 – p.79, l.7, p.110, ll.1-22; Hendley Decl., ¶¶11-12).  Plaintiff is sure to argue that the Florida Bar documents show – and a professional journalist should have realized – that the June 18 Statement is wrong because the Florida Supreme Court reprimanded Plaintiff for violating a settlement agreement he made to resolve a former client's complaint that he took a retainer but did not do any work, and not because he actually failed to do any work after taking the retainer.  The law is clear, however, that a mistake in reporting is not clear and convincing evidence of actual malice.  *See, e.g., New York Times*, 376 U.S. at 271-72 ("[E]rroneous statement is inevitable in free debate . . . and must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'") (citation omitted); *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1090 (3d Cir. 1985) ("The mistake regarding Marcone might be called unprofessional, even negligent, but it cannot be said to rise to the level of actual malice.").

The uncontroverted evidence is that the June 18 Statement was Hendley's summary of the Florida Bar documents and *Miami New Times* article, and he believed the statement was true when he wrote and published it.  There is no clear and convincing evidence in the record that he acted with constitutional actual malice, and any mistake he might have made in reporting the reason for

the reprimand is not clear and convincing evidence of actual malice. Summary judgment should be entered in favor of Defendants on Count III.

Count VI is for defamation by implication and is premised upon the June 18 Article. It is, for the most part, indistinguishable from Count III. Specifically, Plaintiff alleges that the June 18 Article defamed him by implication because it failed to report that Plaintiff's reprimand actually was for breaching his settlement agreement with his former client, and instead incorrectly reported that the reprimand was for taking the clients money without doing any work (3AC, ¶¶59, 61-62, 64-65). That is no different than Count III, which alleges that Plaintiff was defamed because the June 18 Statement incorrectly reported the reason for his reprimand, and Count VI fails for the reasons discussed above in connection with Count III.

Count VI also alleges that the June 18 Article did not report that "as set forth in the public consent judgment that accompanied the reprimand, Natalia Humm's [the former client] subsequent attorney agreed with Plaintiff. This attorney of Ms. Humm admitted that Plaintiff did not owe the client a refund and that he did not expect Plaintiff to make payment" (3AC, ¶60). That is not clear and convincing evidence of actual malice because although Ms. Humm's subsequent counsel said he did not expect Plaintiff to provide a refund, it was *not* because the attorney agreed no refund was due.

Plaintiff's Consent Judgment with the Florida Bar recites that *Plaintiff* "asserts" that Ms. Humm's new attorney "admitted" that no refund was due because the new attorney wrote an e-mail to Plaintiff saying ""[i]t is unlikely that (you) would want to refund a cent so please provide me with an explanation so that I may pass it along to Ms. Humm" (Exhibit 15, p.6). That is *not* an admission that no refund was due. Indeed, when Plaintiff asked Hendley about this at his deposition, Hendley (correctly) said the attorney's statement did not say one way or the other whether Plaintiff owed the client money (Hendley Depo., p.84, l.21 – p.85, l.7). There is no clear

15

and convincing evidence that Defendants chose not to report the attorney's "admission" with knowledge or reckless disregard of a supposed defamatory implication that would be created.

Finally, Count VI alleges that "[t]he public reprimand Plaintiff agreed to with the Florida Bar had many mitigating circumstances including: absence of prior disciplinary record, personal or emotional problems, character or reputation, and remorse" (3AC, ¶63).   It is unclear to what Plaintiff is referring because the Supreme Court's public reprimand says, "The Court approves the uncontested referee's report and reprimands respondent" (Ex. **7**).  There is no clear and convincing evidence that Defendants omitted the mitigating circumstances supposedly contained in the public reprimand with knowledge or reckless disregard of a supposed defamatory implication.  Summary judgment must be entered in favor of Defendants on Count VI.

**D.    Summary Judgment Should Be Entered On Counts I and II For The Additional Reason That The Underlying Statements Are True.**

A claim for defamation must be premised on a *false* statement of fact.  *See Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action"); *Johnson v. Clark*, 484 F.Supp.2d 1242, 1247 (M.D. Fla. 2007) (quoting *Byrd*, 433 So.2d at 595) (same); *Jews for Jesus*, 997 So.2d at 1106  (falsity is an element of defamation).

Count I is premised on the September 28 Statement:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps."  Count II is premised on the February 22 Statement, which says that a court found Plaintiff to have "inappropriately touched" his children. Plaintiff alleges that those statements are false because he "has never been found by any legal entity or agency to have sexually abused his children," and he has never committed or been convicted of a crime relating to touching his children (3AC, ¶¶12, 26-27, 32-33, 32).  Summary

judgment should be entered in favor of Defendants because the September 28 and February 22 Statements are true.[6]

With respect to the September 28 Statement (Count I), it does not say that Plaintiff was found to have sexually abused his children, nor does it say that he committed or was convicted of a crime. The Statement does say that Plaintiff was "capable of disturbing, criminal sexual behavior," but that is an accurate description of the conduct in which the magistrate and appellate court said he engaged. "Criminal" – as used in the September 28 Statement – accurately describes the behavior described and addressed by the Ohio courts; it is not an adjective describing Plaintiff or a pronoun substituting for his name. Indeed, such conduct *is* criminal in Ohio, *see* Ohio Rev. Code, §§2907.01(B) and 2907.06 (and in Florida, *see* §800.04(5)). Additionally, as the appellate court wrote – and as the September 28 Article quoted – Plaintiff invoked his Fifth Amendment right against self-*incrimination* when asked whether he inappropriately touched his children (Ex. 4, ¶26; ECF No. 52-1). The appellate court also wrote that "the magistrate judge heard evidence from the children's pediatrician who reported allegations of *sexual abuse* to children services, and from a social worker who found that *sexual abuse* was 'indicated'" (*Id.*) (emphasis added).

---

[6] In a prior Order, the Court cited decisions from Florida courts holding that the truth is a defense only when coupled with good motives [ECF No. 50, p. 11]. Although those decisions *might* apply when the plaintiff is a private individual (the Florida Supreme Court has noted that there is a question regarding "whether in a First Amendment context it can ever be actionable, whatever the motive, to speak the truth," *see In re: Standard Jury Instructions (Civil Cases 89-1)*, 575 So.2d 194, 201 (Fla. 1991)), they are **inapplicable** when the plaintiff, like Plaintiff here, is a public figure for the purposes of *New York Times*. The U.S. Supreme Court has made clear that where the plaintiff is a public figure, there can be no liability for publishing a truthful statement even if it was published with, for example, an intent to injure the public figure. *See Garrison*, 379 U.S. at 70-74; *see id.*, at 73 n.8; *see also Mangual v. Rotger-Sabat,* 317 F.3d 45, 67 (1st Cir. 2003) (citing and quoting *Garrison*, 379 U.S. at 70-73) ("*Garrison* rejected any notion that the allegedly libelous utterance must have been published 'with good motives and for justifiable ends.' Later rulings expanded the *New York Times* standard to statements regarding public figures.") (additional internal citation omitted).

With respect to the February 22 Statement (Count II), it says only that Plaintiff was found to have "inappropriately touched" his children.  That is exactly what happened.  The appellate court issued an opinion saying "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (Ex. 4, ¶27).   Additionally, to the extent Count II is premised upon a "republication" of the September 28 Statement (3AC, ¶¶32-33), it fails because, as just discussed, the September 28 Statement is true and there is no authority imposing liability for republishing true statements.  Summary judgment should be entered in favor of Defendants on Counts I and II.

**E.      Summary Judgment Should Be Entered On Counts I, II, And III For The Additional Reason That The Underlying Statements Are Substantially True.**

Summary judgment is warranted on Counts I, II, and III for the additional reason that even if the September 28, February 22, and June 18 Statements are not "perfectly accurate," they are substantially true, and that is all the law requires.

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *See Smith v. Cuban American National Foundation*, 731 So.2d 702, 706 (Fla. 3d DCA 1999) (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)); *see also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999) (applying Florida law).  "According to U.S. Supreme Court and Florida case law, falsity exists only if the publication is substantially and materially false, not just if it is technically false." *See Smith*, 731 So.2d at 707.  Put another way, "[a] 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *See Id.* (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).  Thus, instead of requiring perfect accuracy, what Florida "'law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article,

are immaterial.'" *See McCormick v. Miami Herald Publishing Co.*, 139 So.2d 197, 200 (Fla. 2d DCA 1962) (quoting 53 C.J.S. Libel and Slander §122).

The "gist" or "sting" of the September 28 and February 22 Statements – in the context of the articles in which they appear[7] – is that Ohio courts found that Plaintiff inappropriately touched his children. That is, in fact, what those courts wrote. Plaintiff – who invoked the Fifth Amendment against self-*incrimination* rather than testify about what he did – alleges that the September 28 and February 22 Statements are nonetheless actionable because, by describing his behavior as criminal, they inaccurately state that he committed and/or was convicted of a crime (3AC, ¶¶26, 32-33). Putting aside the fact that the February 22 Statement says nothing about "criminal," the substantial truth doctrine exists exactly for this type of situation.

The effect on the mind of a reader of the September 28 Statement, and the article's lengthy quotation from the appellate court's opinion, is that Plaintiff inappropriately touched his children and the magistrate heard evidence that the children were sexually abused. Excluding the word "criminal" from the Statement – such that it would read: "Turns out, gays aren't the only ones capable of disturbing sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" – does not produce a different effect on the mind of the reader. The gist or sting remains the same: courts in Ohio found that Plaintiff inappropriately touched his children.[8]

Similarly, the gist or sting of the June 18 Statement is that Plaintiff was publicly reprimanded for violating the ethical rules governing attorney conduct. Plaintiff admits he was

---

[7] In evaluating the meaning of a statement, including any defamatory meaning, the statement must be viewed in the totality of the publication in which it appears. *See Byrd*, 433 So.2d at 595; *Smith*, 731 So.2d at 705.

[8] As mentioned above in note 3, Plaintiff's putative expert testified that a court finding that someone "inappropriately touched" a minor child sounds like child abuse (Madden Depo., p.75, l.22 – p.76, l.14, p.99, l.24 – p.101, l.2).

publicly reprimanded by the Florida Supreme Court for ethics violations, but claims the June 18 Statement is nonetheless false because he was publicly reprimanded for violating an agreement with a former client to settle the client's complaint that he took money without doing any work, and not because he failed to do any work for the client (3AC, ¶¶17-22).

The effect on the mind of a reader of the June 18 Statement is that Plaintiff was publicly reprimanded by the Florida Supreme Court for ethics violations. Reporting that Plaintiff was reprimanded for violating an agreement with a client to settle the client's complaint that he took her money but did not do any work (which he concedes is true) – instead of saying Plaintiff was reprimanded for not doing any work for the client (which he alleges is false) – would not have produced a different effect on the mind of the reader. The gist or sting remains the same: Plaintiff was publicly reprimanded by the Florida Supreme Court because he violated the rules of ethics.

Finally, to the extent Counts II and III are premised upon the republication of the September 28 Statement (3AC, ¶¶32-33, 41), they fail because the September 28 Statement is substantially true, and there is no authority imposing liability for the republication of a substantially true statement. Summary judgment should be entered in favor of Defendants on Counts I, II, and III.

## F.   Summary Judgment Should Be Entered On Counts I And II For The Additional Reason That The Underlying Statements Are Fair And Accurate Reports.

"[M]any safeguards and privileges have been established throughout the years that have effectively balanced the right of individuals to be free from defamatory statements against the rights guaranteed by the First Amendment to freedom of expression." *See Jews for Jesus*, 997 So.2d at 1111. One of these privileges is for fair and accurate reports of government activities and documents. *Id.*

The press has a privilege to report on the contents of government documents, so long as the report of the document is fair and accurate. *See Woodard v. Sunbeam Television Corp.*, 616

So.2d 501, 502 (Fla. 3d DCA 1993); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 977 (Fla. 3d DCA 1987); *Huszar v. Gross*, 468 So.2d 512, 515-16 (Fla. 1st DCA 1985); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997).  This privilege applies even if the content of the documents is erroneous; and the press has no duty to determine the accuracy of the content before publishing fair and accurate reports of it.  *See Woodard*, 616 So.2d at 502-03; *Ortega*, 510 So.2d at 976.

The Ohio appellate court issued a written opinion recounting the magistrate's order and holding that "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children."  The September 28 and February 22 Articles quote the entirety of the appellate court's discussion of the issue and, in doing so, are fair and accurate reports of the appellate court's opinion.  Additionally, the September 28 Statement's description of Plaintiff being capable of "criminal" behavior fairly and accurately characterizes the inappropriate conduct described in the court orders.  *See, e.g.,*Ohio Rev. Code, §§2907.01(B) and 2907.06.  Put simply, the September 28 and February 22 Statements are not actionable because they are fair and accurate reports of a court order.  Summary judgment should be entered in favor of Defendants on Counts I and II, including to the extent Count II is based upon republication of the September 28 Statement because there is no authority imposing liability for republishing fair and accurate reports of orders.

**G.     Summary Judgment Should Be Entered On Counts IV And V For The Additional Reason That An Omission Did Not Create An Allegedly Defamatory "Implication."**

Counts IV and V are for defamation by implication premised upon the September 28 and February 22 Articles, respectively, and the Court has limited those counts to the "omission theory" of defamation by implication [ECF No. 50, pp.11-12].   As noted above, Plaintiff alleges that the September 28 and February 22 Articles omitted to report Plaintiff's arguments as to why he

believes the Ohio courts were wrong, and that the omission created the false implication that he "sexually abused and/or inappropriately touched his two children's private parts" (3AC, ¶¶50, 56). Counts IV and V fail.

To the extent Plaintiff alleges there was an implication that he "sexually abused" the children, any such implication was *not* created by an omission of facts from the September 28 and February 22 Statements.  Instead, any such implication was created by the Ohio appellate court's opinion, which – as quoted in the September 28 and February 22 Articles – said the magistrate heard evidence from a pediatrician who reported allegations of "sexual abuse," and from a social worker who said "sexual abuse was 'indicated'" (Ex. 4, ¶25).

To the extent Plaintiff alleges there was an implication that he inappropriately touched his children, there was no such implication.  Instead, the appellate court *expressly and directly* stated that it was affirming the finding that Plaintiff "inappropriately touched" the children, and the September 28 and February 22 Articles *expressly and directly* repeat what the appellate court wrote.  Defendants are not aware of any decisions in which a plaintiff has been permitted to assert a claim for defamation by implication arising from express and direct statements in a publication. Indeed, a claim that express and direct statements are false and defamatory is a claim for defamation and, as discussed above, Plaintiff has no claim for defamation arising from the express and direct statements in the September 28 and February 22 articles that Plaintiff was found to have inappropriately touched his children.  Summary judgment should be entered in favor of Defendants on Counts IV and V, including to the extent that Count V is premised upon a republication of the September 28 statement in the February 22 article.

**H.**     **Summary Judgment Should Be Entered On Counts IV Through VI For The Additional Reason That Any Implication Is Substantially True.**

Counts IV through VI are for defamation by implication, and are premised upon the September 28, February 22, and June 18 Articles, respectively. As addressed in greater detail above (III.E), the law does not require perfect accuracy; instead, all that is required is substantial truth. *See Smith*, 731 So.2d at 706-07; *McCormick*, 139 So.2d at 200. The substantial truth doctrine applies to defamation by implication because it is one of the "protections of defamation law." *See Jews for Jesus*, 997 So.2d at 1108. As also addressed above, any "implication" that Plaintiff was found to have inappropriately touched his children, or that he was reprimanded by the Florida Supreme Court for ethics violations, as alleged in paragraphs 50, 56, and 65, is substantially true. Summary judgment should be entered in favor of Defendants on Counts IV through VI, including to the extent that Counts V and VI are premised upon a republication of the September 28 Article because there is no authority imposing liability for republishing substantially true statements.

**I.**     **Summary Judgment Should Be Entered On Counts IV And V For The Additional Reason That The Underlying Articles Are Fair And Accurate Reports.**

The privilege for fair and accurate reports applies to claims for defamation by implication. *See Jews for Jesus*, 997 So.2d at 1108, 1111. Counts IV and V, for defamation by implication, are premised on the September 28 and February 22 Articles, respectively. As discussed in greater detail above (III.F), Defendants have a privilege to publish fair and accurate reports of court orders. The September 28 and February 22 Articles – which reprint the entirety of the appellate court's discussion of inappropriate touching – are fair and accurate reports of government documents, which means any implication arising from the articles was created by the court's opinion, and not the articles. Summary judgment should be entered in favor of Defendants on Counts IV and V, including to the extent that Count V is premised upon a republication of the September 28 Article

because there is no authority imposing liability for republishing fair and accurate reports of court orders.

**J.      Summary Judgment Is Warranted On All Counts Because Plaintiff Is Libel-Proof.**

Each count seeks recovery for alleged injuries to Plaintiff's reputation in the professional communities in which he works as a lawyer, author, writer, and columnist (3AC, ¶¶27-29, 35-37, 45-47, 51, 57, 68-69).  Plaintiff's reputation, however, was so awful prior to the publication of the September 28, February 22, and June 18 Statements that he was "libel-proof," which means that his reputation was incapable of being further injured by publication of those statements.  *See, e.g., Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986); *Lamb v. Rizzo*, 391 F.3d 1133, 1137-39 & n.4 (10th Cir. 2004) (collecting decisions).

Here, before any of the statements at issue were published, courts across the country had published orders detailing the unprofessional and unethical behavior that has come to define Plaintiff's "reputation." *See, e.g., Stern v. Burkle*, 2007 WL 2815139 (N.Y. Sup. Ct. Sept. 6, 2007) (denying application for admission *pro hac vice*) (collecting decisions relating to Plaintiff) ("Mr. Klayman's record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process."); *Klayman v. Judicial Watch, Inc.*, 802 F.Supp.2d 137, 150-51 (D.D.C. 2011) ("Based upon its years of experience with this litigation, and having witnessed firsthand Klayman's long and established pattern of openly disobeying court orders, the Court finds that a severe sanction is necessary to protect the integrity of the judicial system and to deter similar misconduct in the future.  As previously mentioned, Klayman's conduct rises to a level and pattern of intransigence that is not often witnessed."); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 994 F.Supp. 447, 460 (S.D.N.Y. 1997) *aff'd* 138 F.3d 33 (2d Cir. 1998) (noting Plaintiff has "a history of this type of conduct" and holding that Plaintiff's "conduct has degraded the legal profession and disserved justice."); *MacDraw, Inc. v. CIT Group Equipment Financing,*

*Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996) ("[W]e note our sympathy with the district court's frustration; in pursuing this appeal, plaintiff's counsel submitted briefs that included inaccurate characterizations of the record and comments that we consider entirely inappropriate."); *Material Suppl Lint'l, Inc. v. Sunmatch Industrial Co., Ltd.*, 1997 WL 243223 at *8 n.17 (D.D.C. 1997) ("The record will speak for itself, but it behooves the court to observe that from pretrial through post trial proceedings, Mr. Klayman's performance was episodically blighted by rude and unprofessional behavior which was directed towards the presiding judge and opposing counsel."); *Wire Rope Importers' Association v. United States*, 1994 WL 235620 at *7 (Ct. Int'l Trade May 26, 1994) (imposing sanctions); *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 562 (Fed. Cir. 1996) (affirming order imposing sanctions) (stating the trial court's "order makes clear that the trial judge considered Mr. Klayman to have acted in bad faith, in particular by making certain representations to the court."); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 188, 190 (D.D.C. 1999) (addressing Plaintiff's abuse of discovery sanctions for making misrepresentations to the court); *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 159 F.Supp.2d 763, 764 (D.D.C. 2001) (describing Plaintiff's filing as "forked-tongue").

As this shows, Plaintiff's reputation was so poor prior to the publication of the statements at issue that it is impossible for them to have injured Plaintiff's reputation, especially the June 13 Statement relating to Plaintiff's reprimand from the Florida Supreme Court. Summary judgment should be entered in favor of Defendants on all counts because he is libel-proof.

## IV.    CONCLUSION

For these reasons, summary judgment should be entered in favor of Defendants on each count of the Third Amended Complaint.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendants
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/ Scott D. Ponce
Sanford L. Bohrer (FBN 160643)
Scott D. Ponce (FBN 0169528)
Email: sbohrer@hklaw.com
Email: sponce@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October 2014, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF System.

/s/ Scott D. Ponce

#32996143_v1

26