UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LARRY KLAYMAN,**

    **Plaintiff,**

v.                                                                     Case No: 5:13-cv-143-Oc-22PRL

**CITY PAGES, KEN WEINER, AARON RUPAR, PHOENIX NEW TIMES, MATHEW HENDLEY and VOICE MEDIA GROUP**

    **Defendants.**

## ORDER

This matter is before the Court on Plaintiff's motion to compel the production of documents and to appoint a computer expert (Doc. 87); and Defendants' motion to strike the motion to compel. (Doc. 89). Responses have been filed. (Docs. 91 & 93). Although there is no question that Plaintiff has not conducted discovery in a timely manner and that he filed the motion to compel after the close of discovery, the Court nonetheless will consider the motion to compel on the merits. Accordingly, Defendants' motion to strike (Doc. 89) is due to be **denied.**

    **I.    Background**

This defamation action arises out of statements made in three articles written and published by Defendants relating to child custody and support proceedings in Ohio between Plaintiff Larry Klayman and his former spouse; and disciplinary proceedings by the Florida Bar as to Larry Klayman. Plaintiff has sued Ken Weiner (a/k/a Ken Avidor) and Aaron Rupar, both of whom are reporters and writers for Defendant City Pages; and Mathew Hendley who is a reporter for

Defendant Phoenix New Times. Plaintiff has also sued Voice Media Group, which owns City Pages and Phoenix New Times.

The operative pleading is the Third Amended Complaint (TAC), which contains six counts. (Doc. 52). Specifically, Count I is for defamation against Avidor, Rupar, City Pages, and Voice Media Group, premised on the article titled: "Bradlee Dean's attorney, Larry Klayman, allegedly sexually abused his own children" that was published on September 28, 2012, and included the following statement: "Turns out gays aren't the only ones capable of disturbing, criminal sexual behavior – apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps." (TAC at ¶26; Doc. 52-1). Count II is for defamation against Hendley, Phoenix New Times, and Voice Media Group premised on statements contained in the article published on February 22, 2013, entitled "Birther Lawyer Fighting Joe Arpaio Recall Was Found to Have 'Inappropriately Touched' Kids" and also included the statement from the September 28, 2012 article. (*Id.* at ¶32; Doc. 52-2). Count III is for defamation against Hendley, Phoenix New Times, and Voice Media Group[1] related to the article entitled "Larry Klayman Under Investigation by Arizona Bar" that was published on June 18, 2013 and included the following statement: "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work." (*Id.* at ¶¶15-22, 40; Doc. 52-3). Counts IV and V are for defamation by implication and are premised upon the September 28, 2012 and February 22, 2013 articles respectively. Plaintiff alleges that those articles omitted to report arguments that in his opinion show that the Ohio courts were wrong, and that the failure to report those arguments creates a defamatory implication that he inappropriately

---

[1] Although Plaintiff states in the heading that Count III is brought against Avidor, Rupar, City Pages, and Voice Media Group, the allegations of Count III relate to Hendley and the June 18, 2013 publication reflects that it was published in the Phoenix New Times and written by Matthew Hendley. (Doc. 52-3).

touched his children. (*Id*. at ¶¶50, 56). Count VI is for defamation by implication related to the June 18, 2013 article. According to Plaintiff the article incorrectly reported that he was reprimanded for taking money from a client without doing any work when, in fact, he actually was reprimanded for failing to honor the terms of the settlement agreement that resolved the client's Bar grievance that Plaintiff took money without doing any work. (*Id*. at ¶¶ 59, 61-62, 64-65).

**II.     Discussion**

At issue here are Plaintiff's Request for Production served upon each of the six Defendants.[2] Plaintiff contends that these requests all relate to the three publications at issue in this case – the September 28, 2012 article, the February 22, 2013 article, and the June 18, 2013 article. Plaintiff asks the Court to overrule Defendants' objections to the Request for Production and require them to fully respond to requests to produce numbered 1 through 7, 21 through 28, and 31.

*A.     Objections to relevance and breadth*

Plaintiff argues that the Court should overrule Defendants' objections as to breadth and relevance. Although Plaintiff quotes all of the requests and objections at issue (pages 2-6), he puts all of his arguments together (pages 6-14), without explaining which parts of his arguments relate to which requests in violation of Local Rule 3.04(b). Presumably, Plaintiff is focusing on requests to produce numbered 1 through 7, to which Defendants raised these objections:

1. Any and all documents, discussions and/or publications that refer or relate in any way to Plaintiff Larry Klayman within the past five years.

---

[2] Although each Defendant served its/his own response, and there was some variation in responses, Plaintiff has not attached any of the responses to the motion to compel, nor has he advised the Court whose responses he is quoting at pages 2-6 of the motion. According to Defendants, all of the responsive documents that exist were within the possession, custody, or control of Defendant Voice Media Group, and a copy of its response is attached as Exhibit 8 to Defendants' response. (Doc. 93-10).

2. Any and all documents, discussions and/or publications that refer or relate in any way to Bradlee Dean of You Can Run But You Cannot Hide International within the past five years.

3. Any and all documents, discussions and/or publications that refer or relate in any way to You Can Run But You Cannot Hide International within the past five years.

4. Any and all documents, discussions and/or publications that refer or relate in any way to Sheriff Joseph Arpaio of Maricopa County, AZ within the past five years.

5. Any and all documents, discussions and/or publications that refer or relate in any way to the case of *Bradlee Dean v. NBC Universal*, filed in the District of Columbia Court of Appeals, No. 12-cv-2002 within the past five years.

6. Any and all documents, discussions and/or publications that refer or relate in any way to the case of *Bradlee Dean v. NBC Universal*, filed in the District of Columbia Superior Court, Civil Action No: 2011 CA 006055 B within the past five years.

7. Any and all documents, discussions and/or publications that refer or relate in any way to the case of *Bradlee Dean v. NBC Universal*, filed in the U.S. District Court for the District of Columbia, No. 1:12-cv-00283 within the past five years.

Plaintiff is entitled to seek discovery of any relevant, non-privileged matter. Fed.R.Civ.P. 26(b)(1). Information is "relevant when "it appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, as the Supreme Court has cautioned, "[t]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).[3]

---

[3] Notably, Rule 26(b)(1) expressly provides that all discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which requires an analysis regarding whether the burden or expense of the proposed discovery outweighs its likely benefits. Further, a pending amendment to Rule 26, if adopted, would make this even more explicit, and would impose a proportionality standard in place of the oft quoted "calculated to lead to the discovery of admissible evidence" language. Proposed Amendments to the Federal Rules of Civil Procedure on Discovery, May 2014, available at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/civil_rules_redline.pdf. The Committee Note presently states: "Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case." It further states that "[t]he considerations

Plaintiff contends that this information is relevant to the state of mind of the journalist, which is of central importance to the issue of malice.  Doc. 87 at 7-8.  Plaintiff has conceded that he is a public figure under the First Amendment for purposes of this lawsuit.  Doc. 93-11 at 4-5. This is a significant concession because public figures suing for defamation and defamation by implication are required to prove, by clear and convincing evidence, that the statements at issue were published with actual malice.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43 (1974); *Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (11th Cir. 1983).  This is a subjective standard requiring the defendants to have published the statements with actual knowledge of their falsity or with reckless disregard of the truth and the test "focuses on the defendant's state of mind at the time of publication."  *Hunt*, 720 F.2d 631, 647 (11th Cir. 1983)(quoting *Long v. Arcell*, 618 F.2d 1145 (5th Cir. 1980)).  "Despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication.  *Church of Scientology, Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001).

There is no dispute that discovery into the editorial process regarding the three subject publications is relevant to the actual malice inquiry.  In fact, Defendants represent that they have already produced to Plaintiff all of the materials upon which Defendants relied in writing the statements upon which Plaintiff is suing.  Doc. 93 at 11-14.  Plaintiff has failed to cite any authority to suggest that evidence relating to other unrelated publications or statements upon which Plaintiff is **not** suing would be relevant in this action.[4]  Moreover, Plaintiff has failed to offer any

---

that bear on proportionality are moved from present Rule 26(b)(2)(C)(iii), slightly rearranged and with one addition."

[4] Indeed, the case upon which Plaintiff primarily relies is *Herbert v. Lando*, 441 U.S. 153 (1979).  (Doc. 87 at 7-8).  In *Herbert,* the plaintiff, who was a public figure required to prove constitutional actual malice, sought discovery relating to the editorial process as to a specific broadcast and article upon which he was suing.  *Herbert*, 441 U.S. at 156-57 & n.2.  The *Herbert* Court held that defendants did not have an absolute privilege to refuse to disclose information regarding the editorial process and explained, "[i]t is

compelling explanation as to why the requested information about Sheriff Joe Arpaio, Bradlee Dean and his foundation, and lawsuits between Dean and NBC Universal, would be relevant to whether Defendants published the statements at issue here about Plaintiff with knowledge of their falsity or with reckless disregard for their truth.  Plaintiff's arguments throughout the motion focus on his belief that Defendants have engaged in a malicious campaign to damage Plaintiff, as well as his clients (Arpaio and Dean) and friends (Michelle Bachmann).[5]  However, as discussed above, the actual malice inquiry focuses on Defendants subjective doubts about the truth of the three publications at issue here – not whether Defendants have ill will or animosity toward Plaintiff and his clients and friends.

Accordingly, based on Defendants' representation that they have produced all of the materials upon which they relied in writing the subject publications, Plaintiff's limited showing as to relevance, as well as the broad scope of the discovery requests, Plaintiff's motion to compel (Doc. 87) is due to be **denied** as to requests 1 through 7**.**

### B.  *No responsive documents and/or documents have been produced*

In response to the requests numbered 21, 22, 24, 25, 26, and 28[6] Defendants state that they "had no such documents."   Plaintiff contends that the lack of responsive documents "defies logic" and he demands that Defendants be required to demonstrate "how and in what world these documents do not exist."   Doc. 87 at 11.   However, the Court has no reason to question counsel's

---

untenable to conclude from our cases that . . . plaintiffs may not inquire directly from defendants whether they knew or had reason to suspect that their damaging publication was in error."   *Id*. at 160.

[5] For example, Plaintiff explains that he seeks information about Arpaio and Dean because "Defendants attempted to harm Plaintiff and his clients Bradlee Dean and Sheriff Joe Arpaio.   In this regard, by harming the clients' lawyer, Plaintiff, Defendants were able to pursue their improper political agenda and severely damage and destroy both Plaintiff and his clients." Doc. 87 at 11.

[6] In quoting the discovery requests and responses thereto, Plaintiff noted that Defendants had no responsive documents to requests numbered 26 and 28. (Doc. 87 at 5). Voice Media Group, however, responded that to the extent responsive documents existed it was producing them.   Doc. 93-10.

representation that no such documents exist.  Likewise, the Court accepts counsel's representation that they have produced all responsive documents to the remaining requests.

Plaintiff's contention that Defendants are concealing evidence is unpersuasive.  Other than conclusory assertions that other evidence must exist, Plaintiff has failed to offer evidence of concealment.  Plaintiff's best argument relates to a blog post that Avidor wrote about the Ohio appellate court's opinion.  (Notably, though, Avidor is not credited as an author on any of the subject publications.)  While Avidor did testify at his deposition that after this action was commenced he changed the settings on his blog post so that it was no longer accessible to the public, and could be accessed only with his permission (*see* Doc. 93-17)[7], Plaintiff's argument that this action by Avidor reveals concealment of actual evidence – and is evidence of some larger scale concealment on the part of the Defendants – is unavailing, as Defendants have produced the blog post to Plaintiff.  (Doc. 93-13).[8]

Likewise, the fact that Defendants did not produce the book about Michelle Bachmann, which was co-authored by Defendant Avidor and "featur[ing]" Plaintiff – but unrelated to the publications at issue here – does not show that Defendants are withholding evidence.  Even assuming the book was responsive to the Request for Production, the Court has already found that Defendants properly objected to the production of such unrelated publications on the grounds of relevance.

---

[7] Defendant Aaron Rupar testified that Avidor "deleted" a blog post but then later clarified that he did not know whether the post was deleted or whether Avidor simply restricted access to it.  (Doc. 93-12). Rupar stated that he had "no knowledge of what Ken [Avidor] did with that post."  (Doc. 93-12 at 14).

[8] Plaintiff also states that "Avidor testified that he destroyed an email he sent to Defendant Rupar and Defendant Rupar acknowledged the deletion."  Doc. 87 at 11.  Even assuming there is support for this assertion that the email was deleted, Defendants produced the email to Plaintiff.  Doc. 93-13.

Accordingly, Plaintiff's motion to compel (Doc. 87) as to requests to produce numbered 21 through 28 and 31 is due to be **denied**.

### C.     *Third-party computer retrieval expert*

The Court also denies Plaintiff's request for a third-party computer retrieval expert. Plaintiff contends that "[i]n light of Defendants' failure to comply with relevant discovery law, a third-party computer expert is necessary to search Defendants' work and personal computers, telephone records and cell phone records, as at least one Defendant testified under oath that he erased pertinent information regarding the case."  Doc. 87 at 13.

Plaintiff's argument is premised on his position that Defendants have improperly withheld documents.  However, as discussed above, Defendants represent that they have produced all of the materials upon which Defendants relied in writing the statements upon which Plaintiff is suing; and the Court has found that Defendants otherwise properly objected to Plaintiff's discovery requests.  Plaintiff's mere speculation that more documents must exist is not a sufficient basis for the Court to order an invasive search of Defendants computers and telephone records.

Indeed, before compelling such an inspection, the Court must weigh inherent privacy concerns against its utility.  *Wynmoor Community Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D.Fla. 2012) (citations omitted).  The Court should consider whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests.  *Id.*

Although there is precedent for compelling a forensic examination in appropriate circumstances, those circumstances do not include the facts of the instant case.  *See Wynmoor*, 280 F.R.D. at 687 (granting motion to compel a forensic examination where responding party had

not produced any electronically stored information and was unwilling to conduct a search of its computer system for responsive documents). Plaintiff's conclusory and unpersuasive assertions are inadequate to meet his burden of showing good cause to warrant a forensic examination under Fed. R. Civ. P. 26(b)(2)(C).[9]

### III. Conclusion

For all of the reasons stated, it is **ORDERED**:

1. Plaintiff's motion to compel (Doc. 87) is **DENIED**.

2. Defendants' motion to strike (Doc. 89) is **DENIED**.

3. The parties' requests for fees and costs are **DENIED**.

4. Because the Court was able to rule on the discovery motions without a hearing,

Plaintiff's motion for telephonic hearing (Doc. 96) is **DENIED** as moot. The Court recognizes that it is standard practice in many state courts in Florida to call motions up for hearing. While

---

[9] Under 26(b)(2)(C), the Court must limit the frequency or extent of discovery otherwise allowed if it determines that certain conditions exist. See Rule 26, comment, 2006 Amendment ("Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause, considering the limitations in Rule 26(b)(2)(C) that balance the costs and potential benefits of discovery.") Indeed, the Court can (and should) limit the extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C); also comment, 2006 Amendment ("Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessibly, subject to the (b)(2)(C) limitations, that apply to all discovery.").

The commentary clearly states that "[t]he requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and providing information." The express, and unequivocal, language of Rule 26(b)(2)(C) provides that the Court shall consider "the importance of the discovery in resolving the issues." And the commentary further explains that, to aid in this overall determination, appropriate considerations include: "the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources," and "predictions as to the importance and usefulness of the further information." Weighing all of these factors, I submit Plaintiff has failed to make a showing that an invasive computer examination should be ordered.

counsel may request oral argument in its papers, counsel should not call chambers or the Clerk's office to attempt to set motions for hearing.   The Court will set **in-person** hearings as it deems appropriate.

**DONE** and **ORDERED** in Ocala, Florida on October 22, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties