IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 5:13-CV-00143-ACC-PRL

LARRY KLAYMAN,

        Plaintiff,

v.

CITY PAGES, et. al.

        Defendants.

**MOTION FOR DISQUALIFICATION PURSUANT TO
28 U.S.C. § 144 AND 28 U.S.C. § 455(a)**

Pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455(a), Plaintiff hereby respectfully moves for disqualification or recusal of this Court and hereby presents this memorandum and the attached affidavit (Exhibit 1). Plaintiff further respectfully requests that this case be transferred to another judge of this district so that this case may move forward and that prior, relevant orders be vacated, including but not limited to the Court's Order regarding punitive damages and the order granting summary judgment in favor of Defendants.

**INTRODUCTION**

This lawsuit arises from Defendants' willful and wanton publication of false and per se defamatory statements regarding Plaintiff in three, separate, widely circulated articles, which falsely accuse Plaintiff of committing a crime and/or being convicted of a crime by sexually abusing his own children, and stealing money from a client he was legally representing. In fact, Defendants intentionally publicized these false statements to harm Plaintiff, his reputation, and his standing as a reputable lawyer, given Plaintiff's legal representation in controversial cases advocating conservative positions contrary to Defendants' political philosophy.

1

Plaintiff is a lawyer licensed to practice in Florida (and in other jurisdictions) and has at all times been a member in good standing throughout his approximate 38-year career as an attorney. Plaintiff practices law continuously and extensively, throughout the country and within Florida, and is a citizen of, resides in, and does business in this judicial district.

Defendants sought to punish Plaintiff for his conservative views and legal advocacy of conservative positions by destroying Plaintiff's reputation, both personally and professionally, while perpetuating their own political agenda. Third Amended Complaint ("TAC") [Dkt. # 52] ¶ 9. In order to achieve their goal to harm Plaintiff, Defendants willfully published (with actual malice) three, separate and widely circulated defamatory articles, entitled "Bradlee Deans' Attorney, Larry Klayman, Allegedly Sexually Abused his own Children," dated September 28, 2012, "Birther Lawyer Fighting Joe Arpaio Recall was Found to have 'Inappropriately Touched' his Kids," dated February 22, 2013, and "Larry Klayman Under Investigation by Arizona Bar," dated June 18, 2013. TAC ¶¶ 10, 11, 13, 14. In these articles, Defendants deliberately published false statements accusing Plaintiff of committing and/or being convicted of a crime as well as stealing money from a client he was legally representing. TAC ¶¶ 10,15.

As a result of Defendants' wide dissemination and publication of the above defamatory statements, Plaintiff has been severely harmed in his reputation, particularly as an attorney and civil rights activist, in addition to being injured in his personal, social, official and business relations.

Plaintiff filed this lawsuit in an effort to receive justice for the harm that has been committed against him.  On April 3, 2015, this Court granted summary judgment in favor of the Defendants and entered judgment for Defendants. *See* [Dkts. # 124, 125]. In its Order of April 3, 2015, evidence of extra-judicial bias and prejudice manifested itself. This Court must

respectfully recuse itself or be disqualified from this lawsuit. As shown below, this Court mocks and ridicules Plaintiff, in such a showing of disrespect that it demonstrates extra-judicial disdain and bias. In addition, this Court excoriates Plaintiff for pursuing his legal rights in appealing this Court's Orders.

## THE LAW

An impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972). *See also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) ("powerful" constitutional interest in fair adjudicative procedure). Congress has sought to secure the impartiality of judges by requiring them to step aside, or in some instances, disqualify themselves, in various circumstances.

In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct." *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . . ." ABA Code Of Judicial Conduct Canon 3(C)(1) *see also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (en banc).

The language of the Judicial Code leaves no doubt that that recusal process is to be self-executing, as the judge should not unethically wait for a recusal motion to be filed. **"It is intended to be used by a judge at the start of each case as a checklist to assist in deciding whether at that point he should disqualify himself from any participation in the proceedings . . . [E]ven before appraising participation in the case under the [Judicial Code], the judge should first consult his own emotions and conscience, and pass an**

3

**'internal test of freedom' from disabling conflicts."** Leslie W. Abramson, Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct 10 (2d ed. 1992) (emphasis added).

Recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism' to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994)); *See also Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) (recusal was proper because the judge "ha[d] created an appearance of personal bias or prejudice").

Two statutes govern the standard for recusal and disqualification of a federal district judge – 28 U.S.C. § 144 and 28 U.S.C. § 455. *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1982). Section 144 provides for recusal when a party files a timely and technically correct affidavit and motion alleging that the judge before whom the matter is pending is personally biased or prejudiced against him or her in favor of an adverse party. *Id*. Under the United States Code, a district judge must recuse herself from a proceeding after a party has properly filed an affidavit pursuant to 28 U.S.C. §144.

28 U.S.C. §144 provides in its entirety:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

4

"The disqualification statute, 28 U.S.C. §144, is **mandatory and automatic**, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge. The judge is a silent defendant, unable to make findings on the truth or falsity of the affiant's allegations, and truth must be presumed." *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (emphasis added). The allegations may be based upon information and belief. *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920); *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967).

The test under 28 U.S.C. § 455(a) is "whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (quoting *Christo v. Padgett*, 233 F.3d 1324, 1333 (11th Cir. 2000)). Under 28 U.S.C. § 455(a), a judge must recuse himself if a reasonable person with knowledge of all the facts would conclude that his impartiality might reasonably be questioned. *United States v. Nelson,* 718 F.2d 315, 321 (9th Cir. 1983). Further, the Supreme Court has held that a violation of section 455(a) takes place even if the judge is unaware of the circumstance that created the appearance of impropriety. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the trial judge was a member of the board of trustees of a university that had a financial interest in the litigation, but he was unaware of the financial interest when he conducted a bench trial and ruled in the case. The Court of Appeals nevertheless vacated the judgment under Fed. R. Civ. P. 60(b) because the judge failed to recuse himself pursuant to section 455(a), and the Supreme Court agreed.

Plaintiff is representing himself pro se in this lawsuit at great time and expense. Courts have also held that a jurist is subject to disqualification when a conflict of interest or extra-judicial bias toward the client's attorney becomes manifest. *Souder v. Owens-Corning Fiberglas*

*Corp.*, 939 F.2d 647, 653 (8th Cir. 1991). ("Bias against an attorney can reasonably be imputed to a party."). In *Foster*, the court held that an attorney who files a motion for change of judge in good faith is not required to prove actual prejudice by the judge. *State ex. rel. Strain v. Foster*, 537 P.2d 547 (Ore. 1975). In *Hulme*, a judge who had a prior negative interaction with litigant's counsel in other cases was held to be disqualified in a mandamus proceeding. *Hulme v. Woleslagel*, 493 P.2d 541 (Kan. 1972). More importantly, however, courts have held that the facts are legally sufficient to disqualify a judge where there has been prior conflict between the judge and counsel, where there was palpable antipathy on the part of the judge toward counsel, and where an attorney filed a complaint or charges against the judge.

Finally, the U.S. Courts of Appeals for the First, Fifth, Sixth, Tenth, and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993).

## **ANALYSIS**

In its' Order of April 3, 2015 ("Order"), the Court manifested a clear-cut, extra-judicial bias and prejudice that warrants the Court's recusal from this lawsuit.

During the course of the litigation, Plaintiff inadvertently made a few filing errors. In one instance, Plaintiff accidentally filed a 25-page response to Defendants Motion for Summary Judgment when the page limit was actually 20 pages. Defendants had filed a 25-page motion and Plaintiff made a reasonable error in assuming that the page limitation for an opposition was the same number of pages, after he consulted with another lawyer who inadvertently told him

6

that the page limit was 25 pages. *See* Klayman Affidavit, Exhibit 1 at 5.  Plaintiff regrets this mistake and was not aware of the mistake until the Court issued its ruling on the motion for summary judgment. *See* Klayman Affidavit, Exhibit 1 at 6.  No prejudice resulted to either party and Plaintiff acted in good faith in filing his opposition and did not intentionally violate the Court's local rules. However, the Court views this understandable yet unfortunate mistake as an intentional act of defiance by Plaintiff.  The Court makes it a point to chastise Plaintiff for the excess pages in its Order and believes it to be Plaintiff's intentional disregard for the Court's rules. "Even more, Plaintiff, appearing to believe that the page limit is actually twenty-five pages, crams an absurd amount of text into footnotes to fit even more argument into his already violative filing." Order at 14. (Ironically, the Court's Order has a huge amount of footnotes).

More importantly, the Court committed several factual and legal errors throughout this lawsuit.  The number of legal errors by this Court suggests that they are not inadvertent and instead out of bias and prejudice.

> ". . . The code of judicial conduct does require a judge to "respect and comply with the law," to "be faithful to the law and maintain professional competence in it, " and to "accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to the law." Moreover, it would be incongruous if the principle "ignorance of the law is no excuse" applies to everyone but those charged with interpreting and applying the law to others. Thus, while mere legal error does not constitute misconduct, "[j]udicial conduct creating the need for disciplinary action can grow from the same root as judicial conduct creating potential appellate review . . ."

Cynthia Gray, The Line Between Legal Error and Judicial Misconduct: Balancing Judicial Independence and Accountability, 32 Hofstra L. Rev. 1245 (2004).

As Professor Gray's scholarly review of judicial error makes apparent, not all errors committed by judges, who after all have years of legal training and experience, are innocent. Most notably, this Court disallowed and struck punitive damages from Plaintiff's Third Amended Complaint when it was demonstrated to the Court that it was properly pled.  The Court

7

even denied Plaintiff's motion to amend even though leave to amend is to be freely granted[1] and Plaintiff had additionally shown good cause why amendment was necessary.

This issue of punitive damages was one of great importance for both the parties as well as the Court. If this issue of punitive damages, and their inclusion, was not taken to the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") via a petition for writ of mandamus, it could have resulted in a massive waste of both parties' and court resources in having to retry an entire jury trial should Plaintiff have prevailed. Plaintiff moved the Court for reconsideration and even asked the Court to certify the question for an interlocutory appeal to the Eleventh Circuit. When the Court denied both of these motions Plaintiff was left with no options but to file a petition for writ of mandamus with the Eleventh Circuit. This petition for writ of mandamus, if granted, would have been a benefit to both parties as well as the Court since it would have saved everyone from having to retry the case.

In addition, Plaintiff had a right legally to pursue all legal remedies in what he perceives to be a factually and legally incorrect ruling. If Plaintiff is to be penalized for pursuing his rights, this would work a denial of due process and a manifest injustice. Instead, this Court said in its Order, "[plaintiff] often plunges into a tirade against whomever he feels has wronged him – here, has taken the form of motions to reconsider, objections, and **even a petition for writ of mandamus** with the Eleven Circuit Court of Appeals." Order at 32 (emphasis added).

As yet another example of extra-judicial bias and prejudice, it is apparent from all the circumstances that the Court intentionally sat on and did not rule on Defendants' Motion for Summary Judgment for four months, refusing to issue a ruling until the eve of the trial. Indeed, Defendants' Motion was filed on October 20, 2014. Plaintiff opposed the motion on November

---

[1] *See Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Leave to amend a complaint should be freely given . . . .")

8

19, 2014 and Defendants filed a reply on December 3, 2014. The Court did not issue its decision until April 3, 2015, exactly four months after the motion was fully briefed. More importantly, this date was also only three weeks before the trial was set to begin. The parties had performed all pre-trial obligations. The parties prepared jury instructions, issued subpoenas for witnesses, and performed all other items required for trial.

Plaintiff is representing himself pro se in this matter at great time and expense to himself and his own legal practice. Plaintiff seeks justice for the harm that was done to him as a result of Defendants' false and defamatory comments and is doing so by pursuing his claims in court. Defendants, on the other hand, are a large corporation and the money to further continue to "punish" Plaintiff for daring to bring this lawsuit against them. Defendants' legal expenses are covered by their insurance company and they have hired a powerful Florida law firm to represent them. From all the circumstances, it can only be concluded that the Court simply sat on this motion in order to cause Plaintiff harm, knowing that the closer it got to trial the more Plaintiff would be preparing for it. Plaintiff had a right to believe this case was going to trial and Plaintiff estimates that he spent over $200,000 in time and expenses in preparation for it just during the time period between the date the pleadings were closed concerning Defendants' Summary Judgment Motion and the dismissal of the case, four months later. Thus, the fact that summary judgment was granted so late in the case was severely prejudicial to Plaintiff, and it would appear intentional given all the circumstances set forth herein.

In addition, and more importantly, the Court's judgment shows extrajudicial bias against Plaintiff.

For instance, the Court fashions the entirety of the Order in the theme of Alice in Wonderland, a fictional novel by Lewis Carroll.  Plaintiff has been a distinguished attorney for over 38 years.  This is no way for a judge to act towards a lawyer.

The Court makes statements mocking and insulting Plaintiff and his ability to practice law.  For example, The Court writes:

- *I've been considering words that start with the letter M. Moron. Mutiny. Murder. Mmm-malice.* (How many times has a court in the history of civil litigation used the word "moron" in a pleading and inferred that it applied to a lawyer litigant?)

- *Seventh, and venturing deeper into Wonderland, Plaintiff argues as evidence of actual malice that Avidor and Rupar sought to sell Avidor's "malicious book" featuring "a computer doctored photo maliciously designed to make [Michele] Bachmann look like a deranged lunatic."* (*Id.* at p. 22–23). (The picture was in fact computer-doctored as the Defendants know full well).

- *Because Plaintiff simply hurls various theories of liability without legally supporting his arguments, the Court is forced to spend its limited resources researching issues that Plaintiff fails to.* (After admonishing Plaintiff for not including relevant Florida authority, **the Court itself admits** that Florida case law did not exist. The Court writes,"[e]ntirely out of an abundance of caution, **the Court researched the issue and could not find any Florida authority for the proposition** that providing links to statements already published, without more, republishes those statements." (Emphasis added)).

- *Plaintiff's filings in this case make clear that he does not fully cognize the difference between constitutional actual malice and "ill will" or "hatred," often referred to as common law malice.* (Plaintiff demonstrated on the record that ill will and hatred can be used as circumstantial evidence for proving constitutional malice. Indeed, the Court attempts to slide by this using a parenthetical admitting this. See Order at 24. The record shows that. Plaintiff is well aware of the difference between common law and constitutional malice and has demonstrated in virtually every pleading that ill will, hatred, and the like are *circumstantially* used to prove that the Defendants knew or had reason to know that the garbage they published was false. Instead, the Court continues to mock Plaintiff).

- *Down the Rabbit Hole - "Would you tell me, please, which way I ought to go from here?"   "That depends a good deal on where you want to get to," said the Cat.   "I don't much care where—" said Alice.   "Then it doesn't matter which way you go," said the Cat.   "–so long as I get somewhere," Alice added as an explanation.   "Oh, you're sure to do that," said the Cat, "if you only walk long enough."*

- *Plaintiff seeks in excess of $15,000,000*. (This Court seems to have a problem with the amount of money Plaintiff sought in this lawsuit. Fifteen million dollars, compared to the amount of damage on Plaintiff's reputation, livelihood, business, and family relationships that Defendants' intentionally created, is a minuscule amount).

- *. . . no amount of repeating the word "malice" will overcome the constitutional requirement that Plaintiff must provide . . .*

- *While this line of argument highlights Plaintiff's confusion on the malice standard, this does little to show constitutional actual malice and is hardly "evidence" of the same.* (Again, there is no confusion for Plaintiff as to the malice standard for a public figure and this has been demonstrated in the pleadings, which the Court chose to ignore).

- *The Court learned early on in this case that this approach to litigation is the norm and not the exception for Plaintiff.*

- *Plaintiff's response contains a plethora of irrelevant conjecture and superfluous detail without record citation.*

- *The Court omitted a paragraph from this article mentioning an alleged derogatory email Plaintiff sent to the chairman of the Joe Arpaio recall organization.*

- *Plaintiff's filings in this case make clear that he does not fully cognize the difference between constitutional malice and "ill will" or "hatred" . . .*

- *Plaintiff, while citing a Supreme Court of Kansas case which, in turn, generally cites to an encyclopedia . . .*

- *As he is oft to remind the Court, Plaintiff recently prevailed on a defamation claim in the Southern District of Florida where he was required to prove actual malice.*

- *If Plaintiff simply disagrees with this Order, which no doubt he will, he may appeal.* (Naturally, Plaintiff is appealing the Order. This sarcasm shows extrajudicial bias and prejudice and is wrong on its face. What other recourse does a plaintiff have other than to appeal?).

Finally, and most tellingly, the Court issued a threat and admonition at the close of the summary judgment order which threatened Plaintiff, even taking offense to his having filed a petition for writ of mandamus with the Eleventh Circuit. Specifically, the Court wrote:

**IV. CURIOUSER AND CURIOUSER**

While the Court would not ordinarily conclude with an admonition, this is, of course, no ordinary case. Plaintiff's approach to this litigation has been quite

11

> suspect, to say the least. As has been made clear in this case, as well as through reviewing the relevant proceedings at issue, when Plaintiff receives unfavorable rulings, **he often plunges into a tirade against whomever he feels has wronged him—here, it has taken the form of motions to reconsider, objections, and even a petition for writ of mandamus with the Eleventh Circuit Court of Appeals**. This is all to say that the Court will review any motion for reconsideration of this Order with a very sharp lens. Should Plaintiff file a motion to reconsider, the Court forewarns Plaintiff that any such motion must at least arguably meet the stringent standard for reconsideration of an Order, at the risk of facing sanctions from the Court. To this end, Plaintiff should keep in mind his obligations under Federal Rule of Civil Procedure 11.

Order at p. 32 (emphasis added).

The Court would ironically accuses Plaintiff of engaging in "tirades" when there is no evidence of them on the record and the Court itself derisively engages in what in effect is a mocking and sarcastic tirade against Plaintiff, belittling him throughout the order of April 3, 2015, granting summary judgment in favor of Defendants. That the Order mocks Plaintiff (i.e., Curiouser and Curiouser and as living in Alice in Wonderland) for pursing his rights to seek appellate review and file other pleadings, and in particular seeking appellate review, shows that there is an extra-judicial bias and prejudice that the Court is harboring against him. This is particularly true regarding the appellate review Plaintiff sought of the ruling involving punitive damages that sought to streamline the litigation – so the case would not have to be tried twice if the punitive damage claim was not put before the jury and the jury found for Plaintiff. Filing a petition for writ of mandamus does not constitute a tirade or any act against the judge for which the Court should take personal offense. It would appear that the Court indeed is extra-judicially biased against Plaintiff for his asserting his rights and legally questioning, which is his right to do so, the rulings of the judge.

All these actions make it clear that the Court has an animus against Plaintiff and sought to punish Plaintiff rather than conduct a fair trial before a jury of his peers. The Court caused

Plaintiff, who was representing himself pro se, to spend hundreds of thousands of dollars preparing for trial only to grant summary judgment on the eve of the trial. The Court further repeatedly mocked Plaintiff and admonished him for pursuing his legal rights. Given all the prejudicial statements found in the Court's Order, it is clear that this Court has an extra-judicial bias against Plaintiff and must respectfully recuse itself or be disqualified from this lawsuit. Further, this Court must transfer this lawsuit to another judge of this district so that this case may move forward and be tried before a jury and prior, relevant orders must be vacated, including but not limited to the Court's order regarding punitive damages and the order granting summary judgment to Defendants.

In short, this Court characterizes Plaintiff's case as little more than a bad joke. This Court believes it is appropriate to write quotes about "Moron[s]" and "Murder[ers]" in its Order granting summary judgment in favor of Defendants. This Court mocks, scoffs at and ridicules Plaintiff via a Lewis Carroll *fictional novel* titled "Alice In Wonderland" and in doing so, shows its cards that *maliciously* defaming someone by accusing that person of sexually abusing his own children and failing to provide services as a lawyer, but instead stealing a client's money, are some sort of simple "off the cuff" remarks that can go unscathed and un-remedied. The Court, in essence, uses it's Alice in Wonderland analogies to reveal its disdain for and extrajudicial bias and prejudice against Plaintiff and that his having been trashed illegally by Defendants is simply a fantasy, steeped in Wonderland.

WHEREFORE, for the foregoing reasons Plaintiff respectfully moves for the disqualification or recusal of this Court pursuant to 28 U.S.C. § 144, and respectfully requests that this case be assigned to another jurist of this district. As a result, the summary judgment Order of April 3, 2015 [Dkts. # 124, 125] and the orders relating to punitive damages [Dkts. #

86, 110] should also be vacated. Given the circumstances, recusal would be the only way to ensure that justice is served on both parties without creating an appearance of bias and prejudice. Plaintiff has consulted with Defendants' counsel and, as might be expected, they oppose this Motion for Disqualification and/or recusal.

Dated: May 20, 2015

                Respectfully submitted,

                */s/ Larry Klayman*
                Larry Klayman, Esq.
                Washington, D.C. Bar No. 334581
                Freedom Watch, Inc.
                2020 Pennsylvania Avenue N.W.
                Suite 345
                Washington, D.C. 20006
                (310) 595-0800
                leklayman@gmail.com